1

2

3

4

5

6

7

8
## UNITED STATES DISTRICT COURT

9
### WESTERN DISTRICT OF WASHINGTON

10
### AT TACOMA

11

12

**TROY SLACK, JACOB GRISMER, RICHARD ERICKSON, SCOTT PRAYE, GARY H. ROBERTS, ROBERT P. ULLRICH, HENRY LEDESMA, TIMOTHY HELMICK, DENNIS STUBER, ERIC DUBLINSKI, SEAN P. FORNEY, individually, and as Putative Class Representatives,**

**Plaintiffs,**

v.

**SWIFT TRANSPORTATION CO. OF ARIZONA, LLC,**

**Defendant.**

**NO. 3:11-cv-05843 BHS**

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND SUPPORTING BRIEF**

**NOTE ON MOTION CALENDAR: September 27, 2013**

**ORAL ARGUMENT REQUESTED**

13

14

15

16

17

18

19

20

21
**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND SUPPORTING BRIEF**

22
.

23

24

NELSON BOYD, PLLC
411 University Street, Ste 1200
Seattle, WA  98010
(206) 971-7601

Plaintiffs, individually and on behalf of putative class members, bring this action against Defendant Swift Transportation Company of Arizona, LLC. ("Swift") for violations of Washington's wage and hour laws. Swift's violations include (1) implementing a mileage based pay scheme that does not adequately compensate for overtime for its Washington-based Over-The-Road (OTR) or linehaul truck drivers (LHD), (2) requiring its Washington based drivers to participate in a Swift Driver Orientation Program without pay, (3) failing to comply with minimum wage and overtime laws for its Washington based drivers who participated in "student" driver mentoring programs, and  (4) implementing a Per Diem pay policy that violates Washington law.

Plaintiffs hereby move this Honorable Court for an Order Certifying this matter as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  As a basis for this Motion, Plaintiffs state that the prerequisites to litigate this matter as a class action are met:

1.  The class is so numerous that joinder of all members is impracticable,

2.  There are questions of law or fact common to the class,

3.  The claims of the representative parties are typical of the claims of the class, and

4.  The representative parties will fairly and adequately protect the interests of the class.

5.  Questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and

6.  Class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## I.    INTRODUCTION

Soon after Troy Slack filed a Complaint in July 2011 seeking the overtime wages that he is entitled under Washington law, Swift Transportation launched a concerted campaign of

1   misinformation to discourage its Washington-based employee drivers from joining the lawsuit.

2   As part of this campaign, Swift required that each of its Washington-based drivers sign an

3   "Acknowledgement" that Swift had been paying them overtime.  Swift's Acknowledgement

4   informed the drivers that they were entitled to overtime under Washington law and that Swift

5   had been paying overtime to the drivers.[1]

6          Swift's explanation—that it pays a higher mileage rate in Washington than it does in

7   other states because overtime is already built into the mileage rate—was baseless.  First, Swift

8   did not pay higher mileage rates in Washington than in other states.  The same mileage pay

9   matrices applied uniformly to all of Swift's per mileage drivers—regardless of the drivers' base

10  state.  Second, Swift never established a base rate and determined an appropriate increase in the

11  rate to account for overtime.  In fact, the first time Swift even bothered to consider the issue was

12  after Mr. Slack filed suit.   Swift performed one "audit"—one month after Mr. Slack filed suit—

13  and summarily concluded that Washington's mileage rate was "within the rates it needs to be."[2]

14  Swift's auditor, however, was unable to provide even a rudimentary description of her process, if

15  any, by which she determined that overtime was accounted for within the mileage rate. [3]  Perhaps

16  even more telling, Swift has yet to produce any evidence demonstrating that Swift paid higher

17  mileage rates in Washington than it did in other states.[4]

18         Swift's campaign of misinformation backfired.  The heavy-handed attempts to make the

19  drivers admit they have been receiving overtime ultimately led more drivers to join Troy Slack in

20

[1] *See* "Acknowledgement of Rate of Pay for Washington Based Driving Employees," (Exhibit 1).

21
[2] Koogle Depo. at  62:22-63:02 (Exhibit 2).
[3] "I don't have the exact formula of what I did.  I don't have any of my documents here.  There's nothing I have that

22  can tell you exactly what I did that came up with the rate.  I don't have any of that information here."  Koogle Depo.
67:12-16.   Notably, the auditor had failed to comply with the deposition notice requesting any such documents with
her to the deposition.  Koogle Depo Exhibit (Exhibit 2).

23  [4] Several drivers have testified that their mileage rate was reduced by 3 cents when they transferred from Oregon to
Washington. See e.g., Dublinski Depo. 20:02-20:10; 22:10-22:15 (Exhibit 3); Grismer Depo. 66:07-66:18 (Exhibit

24  4).

his fight for the fair wages guaranteed under Washington law.  In addition to the claims for mileage-based overtime, the Plaintiff drivers now seek to address Swift's violation of Washington's wage and hour laws by pursuing claims for minimum wage and/or overtime earned during orientation and training and repayment of all money wrongfully withheld by Swift in its administration of the Per Diem Program.  Because each of these violations of Washington wage and hour law was consistently applied to all Washington-based drivers, Plaintiffs seek certification under Rule 23(b)(3) for monetary damages.

## II.      STATEMENT OF THE FACTS.

### A.      Swift's Washington-Based Drivers Worked Under a Uniform Policy That Did Not Compensate its Drivers For Overtime.

Washington law requires Swift to pay overtime or provide a reasonable equivalent to overtime to all of its Washington-based drivers.  *Bostain v. Food Express, Inc.* 159 Wa. 2d 700, 153 P.3d 846 (2007). To demonstrate compliance with the overtime requirement, Washington law requires Swift to "maintain records indicating the base rate of pay, the overtime rate of pay, the hours worked by each employee for each type of work, and the formulas and projected work hours used to substantiate any deviation from payment on an hourly basis." WAC 296-128-012. Swift has no such records and has done no such analysis.

Just two months *after* the filing of this lawsuit, Swift increased the mileage pay of its Washington based drivers by one-cent per mile. The penny per mile increase is still woefully inadequate to meet the overtime requirement and is not supported by any calculation required to demonstrate a reasonable equivalent to overtime. This, along with other evidence, will prove that Swift did not compensate and continues not to compensate its drivers for overtime work.

Despite the absence of legally required documentation, Swift contends that its mileage rates incorporate an overtime component. The Plaintiffs vigorously dispute Swift's contention.

Plaintiffs' Motion  For Class Certification
And Supporting Brief
Page **4** of 24

NELSON BOYD, PLLC
411 University Street, Ste 1200
Seattle, WA  98010
(206) 971-7601

1    The focus for purposes of this motion is not whether Swift mileage rates incorporated an

2    overtime component. That is a question for the fact finder.  The relevant question for mileage

3    pay class certification is:  did Swift fail to incorporate overtime pay into its mileage rates? [5, 6]

4    **B.   Swift Did Not Compensate Its Drivers for Time They Spent in a Mandatory Orientation Program.**

5

6        As new hires, all Swift Washington-based drivers are required to complete a two to three-

7    day Swift Driver Orientation Program.  Even though this Orientation program is mandatory,

8    Swift does not pay its drivers for actual time they spend in the Orientation.  Each Plaintiff and

9    potential class member who participated in Swift's Orientation program in the state of

10    Washington since July 18, 2008 (two years preceding the filing of the Complaint), to the present

11    performed work on behalf of Swift and was not paid any wages during the time spent in

12    Orientation.  Swift's policy of not paying new employees a minimum wage for time spent at the

13    Orientation is applied across the board to all mileage-based drivers, including Washington-based

14    drivers.[7]  The issue of whether a driver should have been paid for his attendance at the

15    Orientation is one that can be addressed on a class-basis and does not depend on any

16    individualized factors.[8]

17

18

19   [5] Each named plaintiff has an individual overtime claim. *See* Dublinski Decl. at ¶¶ 7-15; Erickson Decl. at ¶¶ 8-10, 13-17; Forney Decl. at ¶¶ 9-11, 14-17; Grismer Decl. at ¶¶ 8-17; Helmick Decl. at ¶¶ 4-10; Ledesma Decl. at ¶¶ 7-

20   14; Praye ¶¶ 8-15; Roberts Decl. ¶¶ 7-14; Slack Decl. ¶¶ 9-16; Stuber Decl. at ¶¶ 8-10, 13-16; Ullrich Decl. at ¶¶ 6-13.  Plaintiffs' Claims for Relief 2, 3, 5, 6, 7 and 8 relate to Swift's failure to comply with Washington's overtime compensation requirements.

21   [6] Amgen Inc. v. Conn. Retirement Plans, 133 S. Ct. 1184, 1194 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—that

22   they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied")
[7] Although each named plaintiff who began his employment with Swift was required to complete the mandatory orientation and was not paid for his time, only Sean Forney and Scott Praye have claims within the claims period.

23   Forney attended Orientation in or about September 2008; Praye attended Orientation in September 2010. *See* Forney Decl. at ¶¶ 3, 18-20; Praye Decl. at ¶¶ 3, 16-20.
[8] Plaintiffs' Claims for Relief 3, 5, 6, 7 and 8 relate to Swift's failure to comply with Washington law.

24

NELSON BOYD, PLLC
411 University Street, Ste 1200
Seattle, WA  98010
(206) 971-7601

C.      **Swift Did Not Pay Minimum Wage and/or Earned Overtime to Its Drivers Participating in the Mandatory In-Truck Training Program.**

Most Swift Washington-based drivers are also required to participate in an In-truck Training Program; this program teams a new Swift driver with a more experienced Swift driver. Up until November 12, 2012, Swift applied a uniform policy to all of its new drivers, including Washington-based drivers, requiring the new hire to train with an experienced driver.[9]  The length of training varies between two and six weeks depending on the experience level of the new hire—e.g., inexperienced drivers train in truck for 6 weeks, while more experienced drivers (six months or more of verified over-the-road driving experience) only have to complete a minimum of two weeks in the program.

Regardless of the actual duration of the In-truck Training Program, the trainee driver was compensated by a flat-rate weekly salary based on a daily rate of pay, regardless of the number of hours worked.  For a trainee working a regular ten to fourteen hour day, this flat rate equated to less than the minimum hourly wage and obviously made no provision for earned overtime. Each Plaintiff[10] and putative class member who completed this mentoring program between July 18, 2008, and November 2012 (when Swift changed in its pay policy) and who worked 40 hours a week or more is entitled to minimum wage compensation and potentially overtime compensation.[11]

---

[9] See Koogle Depo. at 289:15-290:15 (Exhibit 2)); Miller 59:25-60:10 (Exhibit 5).
[10] Although the In-truck Training Program is mandatory, only Plaintiffs Sean Forney and Scott Praye took part in the training program during the claims period.  Forney drove for two weeks with a mentor, and each day he worked between 10 and 14 hours per day.  Although Forney should have received overtime pay for time worked over 40 hours, his pay did not rise to the minimum hourly wage.  Forney Decl. ¶¶ 4, 21-22. Praye drove for eight to nine weeks with a mentor, and each day worked between 8 and 10 hours.  Although Praye should have received overtime pay for time worked in excess of 40 hours per week, his pay did not rise to the minimum hourly wage.  Praye Decl. ¶¶ 3-4, 16-20.
[11] Plaintiffs' Claims for Relief 2, 3, 5, 6, 7 and 8 relate to Swift's failure to pay minimum wage and/or overtime to employees while they are participating in In-truck Training.

Plaintiffs' Motion  For Class Certification
And Supporting Brief
Page **6** of 24

NELSON BOYD, PLLC
411 University Street, Ste 1200
Seattle, WA  98010
(206) 971-7601

1

2

### D.    Swift Implemented a Per Diem Policy that Benefits Swift at the Expense of the Driver and in Violation of Washington Law.

Between July 18, 2008, and the end of 2011, Swift offered a Per Diem program to all of

its drivers, including Washington-based drivers, who were paid on a mileage rate.  Swift's Per

Diem policy provided that all solo drivers who elected to participate or remain in the program

would have ten cents deducted from their per mileage rate of pay and then have eight and one-

half cents per mile paid back to them as "Per Diem" that would not be subject to income tax.

Washington law prohibits an employer from "deriv[ing] any financial profit or benefit from any"

wage deductions during on-going employment.  WAC 296-126-028.  At the expense of the

participating drivers, Swift benefitted from its Per Diem program at the rate of one and one-half

cents for every mile driven by each participating Washington-based driver from July 18, 2008, to

the end of 2011.[12, 13]  A number of Plaintiffs[14] and scores of potential class members participated

in this Per Diem program during the claims period.[15]

## III.    THE REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 23 HAVE BEEN SATISFIED.

In moving for class certification, Plaintiffs must show that a class action will "advance

'the efficiency and economy of litigation which is a principal purpose of the procedure.'" *Gen.*

*Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 159 (1982)(*quoting Am. Pipe & Constr. Co. v.*

*Utah*, 414 U.S. 538, 553 (1974)).  This Court has broad discretion in determining whether

Plaintiffs satisfy the requirements of Rule 23.    A district court's decision regarding class

certification is subject to "very limited" review, to be reversed "only upon a strong showing that

---

[12] For team drivers, the deduction and pay back was divided equally between two team members, i.e., 5 cents deducted from each team member's mileage rate and 4.25 cents paid back as Per Diem.
[13] See Koogle Depo. at 91:20-92-03 (Exhibit 2).
[14] Named Plaintiffs Richard Erickson, Sean Forney, and Dennis Stuber each has an individual claim against Swift for its administration of the Per Diem program.  See Erickson Decl. at ¶¶ 11, 18-19; Forney Decl. ¶¶ 12, 23-24; Stuber Decl. ¶¶ 11, 17-18.
[15] Plaintiffs' Claims for Relief, 2, 3, 4, 6, 7 and 8 pertain to Swift's implementation of its Per Diem policy.

NELSON BOYD, PLLC
411 University Street, Ste 1200
Seattle, WA  98010
(206) 971-7601

1  the district court's decision was a clear abuse of discretion," *Armstrong v. Davis*, 275 F.3d 849,

2  867 (9th Cir. 2001)( internal quotation marks omitted).[16]

3      A party seeking class certification must satisfy the requirements of Federal Rule of Civil

4  Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b).  The

5  Plaintiffs' claims for violation of overtime, minimum wage, and wage deduction statutes satisfy

6  the requirements of Rule 23(a) and should be certified for class treatment under Fed. Rule Civ.

7  Procedure (23)(b)(3).

8  **A.    The Proposed Class is Narrowly Defined Using Objective and Identifiable Criteria.**

9  This class action consists of four primary claims[17] brought under Washington state law.

10 Each class representative meets the definition of the proposed class and has one or more of the

11 primary claims.  The proposed class itself may be easily defined by using the specific and

12 objective criteria outlined below:

13  **All current and former Swift employee interstate drivers who were assigned by Swift
14  to a Washington position and/or terminal after July 18, 2008; and,**

15      **(1)  Who were paid by the mile and worked in excess of forty hours in a week; or,**

16      **(2)  Who participated in and completed Swift's new driver Orientation Program
             in a Washington location; or,**

17      **(3)  Who participated in and completed Swift's student/mentor In-truck
18           Training Program before November 12, 2012, while assigned to a
             Washington  position and/or terminal; or,**

19      **(4)  Who participated in Swift's Per Diem program for mileage-based drivers.**

20

21

---

22  [16] *See also Millowitz v. Citigroup Global Mkts., Inc. (In re Salomon Analyst Metromedia Litig.*), 544 F.3d 474, 480
    (2nd Cir. 2008)("When reviewing a grant of class certification, we accord the district court noticeably more
23  deference than when we review a denial of class certification.").
    [17] Plaintiffs' 7th Claim for Relief relates to all four policies challenged by the class and would apply to any
24  Washington-based driver who has left his employment with Swift during the claims period.

Plaintiffs' Motion  For Class Certification                          NELSON BOYD, PLLC
And Supporting Brief                                                 411 University Street, Ste 1200
Page **8** of 24                                                     Seattle, WA  98010
                                                                     (206) 971-7601

The above criteria allow for relatively easy identification of the class members using Swift's own work records. Swift's management personnel and named Plaintiffs have agreed that drivers assigned to a Washington terminal are assigned specific position numbers or codes which are used by Swift's central payroll department.[18] Corporate representative Sarah Koogle, the payroll project leader for Swift, testified that she was able to use a position code as "selection criteria of identifying drivers who were –work—or based out of a Washington location" for the last four years.[19] Whether a driver exceeded forty hours of drive-time in any given week can be determined by reviewing Swift's payroll records and Swift's Qualcomm electronic logbook records (as well as the driver's own DOT logbook) for the average speed and mileage each week.[20] Each driver's hire date and payroll records will reflect whether he or she participated in the Orientation Program, the In-truck Training Program, and/or the Per Diem program within the applicable claims period.[21]

**B.      Plaintiffs Satisfy the Requirements of Rule 23(a).**

Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate. *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541, 2550 (2011). "The United States Supreme Court requires district courts to engage in a 'rigorous analysis' of each Rule 23(a) factor when determining whether plaintiffs seeking class certification have met the requirements of Rule 23." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (2011)(citing *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 161(1982)). Plaintiffs

---

[18] *See e.g.,* Koogle Depo. at 34:14-35:24; 47:07-47:13 (affirming drivers are assigned position codes designating the facility form which the driver is managed) (Exhibit 2); Erickson Depo at 16:01-16:17 (testifying that drivers based out of the terminal in  Grandview, Washington, are designated by the code "587") (Exhibit 6).
[19] Koogle Depo. at 47:22-24 (Exhibit 2).
[20] *See* Bush Depo. at 60:04-62:10; 99:08-99:20 (Exhibit 7).
[21] Excluded from the Class are Defendant's Owner/Operators, the Defendant itself, any entity in which Defendant has a controlling interest or which has a controlling interest of Defendant, the shareholders of the Defendant and their immediate family members, and Defendant's legal representatives, assignees and successors.  Also excluded are the Judge to whom this case is assigned and any member of the Judge's immediate family.

NELSON BOYD, PLLC
411 University Street, Ste 1200
Seattle, WA  98010
(206) 971-7601

1    satisfy the four threshold factors:  numerosity, commonality, typicality and adequacy of

2    representation.

3                    **1.   The putative class members are sufficiently numerous.**

4            Numerosity is satisfied where "the class is so numerous that joinder of all members is

5    impracticable."  Fed. R. Civ. P. 23(a)(1).  "Numerosity is presumed where the plaintiff class

6    contains forty or more members."  *In re Washington Mut. Mortgage-Backed Securities*

7    *Litigation,* 276 F.R.D. 658, 665 (W.D. Wash. 2011)(*quoting In re Cooper Cos. Inc. Sec. Litig.,*

8    254 F.R.D. 628, 634 (C.D. Cal. 2009)).

9            **Drivers owed mileage-based overtime:**  This category includes all Washington-based

10   drivers during the claims period whose pay is based on an amount per mile driven and who

11   works in excess of forty hours per week.  Swift admits that approximately 1,319 employee

12   drivers have worked in Washington from 2007 to 2011.[22]  Swift also admits their drivers average

13   fifty-six hours per week and that it sets mileage goals that require a driver to average fifty-six

14   hours per week.[23]

15           **Drivers owed minimum wage for attendance at mandatory Orientation:**  Swift

16   estimates that 1,120 new drivers attended Orientation in Washington between July 18, 2008, and

17   October 12, 2011.[24]  A Driver Development Coordinator at the Swift Sumner facility estimates

18   she has conducted thirty to thirty-five Orientations for new drivers in Sumner, Washington, since

19

20   [22]Decl. of Robin Rohwer [Doc. 2] at ¶ 9.   Rohwer also estimated "Swift employed approximately 323 drivers in
     Washington during any given week" between 2008 and 2011, and "787 employee drivers have left their employment
     with Swift" between 2008 and 2011.  *Id.* Assuming a minimum turnover rate of 45% (Cowling Depo. at 78:13-
21   79:16) (Exhibit 8), an additional 145 new drivers would be added each year, making the total number of mileage-
     based drivers eligible for overtime well in excess of 1,000 Washington-based drivers entitled to overtime.
     [23] Bush Depo. at 58:16-58:22; 76:01-78:07 (Exhibit 7); see also Plaintiffs' Decl. estimating average weekly hours
22   between 60 and 70.
     [24] Rohwer Decl. at ¶ 9.  Rohwer's estimation is particularly remarkable since Swift refused to provide this
23   information in its interrogatory responses.  Swift claimed that the information was "irrelevant" and that it would take
     "1,000" hours to determine who attended Orientation in the State of Washington.   *See* Swift's Responses to Pltfs'
     Interrog. (Set No. Three) at 4:1-15 (Exhibit 9).
24

NELSON BOYD, PLLC
                                                                411 University Street, Ste 1200
                                                                Seattle, WA  98010
                                                                (206) 971-7601

1   November 2011.  Although class size can vary from two to 20 people, Miller estimates the

2   average class size to be ten people—meaning she has provided Orientations for 300 to 350

3   people in the last twenty months.[25]

4        **Drivers owed minimum wage and/or overtime for In-truck Training:**  Based on the

5   number of new drivers moving through Swift's Orientation Program (1,120 in just over three

6   years), a reasonable inference is that the number of new drivers required to participate in In-truck

7   Training establishes numerosity.  Before November 12, 2012, the new drivers were paid $450

8   per week for the first four weeks and $500 per week for the last two weeks.[26]  Depending on

9   experience level, the student driver must complete between two and four weeks of training.

10  Assuming an average week of 56 hours, it is clear that the flat rate does not meet minimum wage

11  requirements much less overtime pay requirements.

12       **Drivers owed withheld Per Diem pay:**  From July 18, 2008, to May 14, 2013, a total of

13  185 employees assigned to a Washington terminal location participated in the Per Diem

14  program.[27] Swift discontinued the Per Diem program for its Washington based drivers on

15  November 12, 2012.

16       **2.   Because Swift's pay policies applied to all Washington-based drivers,
        common questions of law and fact exist.**

17       Plaintiffs have made "'common contention[s] . . . of such a nature" that they "are

18  capable of classwide resolution—which means that determination of [their] truth or falsity will

19  resolve an issue that is central to the validity of each one of the claims in one stroke.'" *In re*

20  *Washington Mut.* 276 F.R.D. at 665 (*quoting Wal-Mart*, 131 S.Ct. at 2551)).  That is, class

21

22

23  [25] Miller Depo. at 104:13-105:6 (Exhibit 5).
    [26] Miller Depo. at 95:06-95:22 (Exhibit 5).
24  [27] Swift's Resp. to Pltfs' Interrog. (Set No. Three) at 3:13-24 (Exhibit 9).

1    certification will create a single forum to generate common answers that will drive the resolution

2    of this litigation. *Id.*

3           Confirming Swift's uniform treatment of its drivers, Swift's Driver Manager JoAnna

4    Cowling testified that the three sliding scale mileage pay matrices identified as Exhibit 2, 3 and 4

5    to her deposition were the sliding scale mileage pay matrices applicable to all Sumner Swift

6    employee drivers at different times during the claims period whether they were driving for

7    Costco or for any other customer while assigned to the Sumner terminal.[28]  Furthermore,

8    Cowling represented that the base mileage rates reflected in the sliding scale under the 300 plus

9    miles column was the base mileage rate applicable to the drivers.[29]

10          Numerous common questions of fact and law arise from Swift's pay policies including

11   but not limited to the following: (1) Whether Swift pay policies failed to compensate its

12   Washington based drivers for overtime? (2) Whether Swift's creation of new Washington based

13   specific pay plans in September of 2011 to increase mileage rates by a penny per mile adequately

14   satisfies Washington's requirement to compensate drivers with the reasonable equivalent of

15   overtime in the uniform rate of mileage pay? (3) If Swift is found to have failed to pay overtime,

16   did it knowingly violate Washington wage and hour laws for failure to pay overtime? (4)

17   Whether Swift violated Washington's wage and hour laws, including RCW 49.46.020 and RCW

18   49.46.090, by failing to compensate drivers for their time spent attending a mandatory Driver

19   Orientation Program? (5) Whether the flat daily rate Swift paid drivers in the Student Mentor

20   Program satisfied Washington's minimum wage and overtime requirements from July 18, 2008,

21   until November 12, 2012 (when Swift changed to hourly pay for student drivers)?  (6) Whether

22

23   ---

[28] Cowling depo. 49:08 – 50:03; 50:22 – 51:04; 51:12 – 51:17; 51:22 – 51:25; 52:20 – 53-16; 54:08 – 54:19; 55:04 – 56:25 (Exhibit 8).
[29] Cowling depo. 55:15 – 56:10 (Exhibit 8).

24

Plaintiffs' Motion  For Class Certification                    NELSON BOYD, PLLC
And Supporting Brief                                           411 University Street, Ste 1200
Page **12** of 24                                              Seattle, WA  98010
                                                               (206) 971-7601

1   Swift's Washington based or Washington positioned student drivers routinely worked in excess

2   of forty hours in a week during the claims period from July 18, 2008, to November 12, 2012?

3   (7) Whether Swift violated Washington law and wrongfully withheld mileage pay from its

4   Washington based or Washington positioned drivers in the implementation of its Per Diem

5   program? (8) Whether Swift's retention of one and one-half cents of every mile driven by its

6   Washington based or Washington positioned drivers in the implementation of its Per Diem

7   program benefited Swift in violation of WAC 296-126-028(3).  (9) Whether Swift willfully

8   violated Washington law in withholding mileage pay from its Washington based or Washington

9   positioned drivers in the implementation of its Per Diem program?

10        **3.   The Plaintiffs' claims are typical of the Class's claims.**

11        Rule 23(a)(3) requires that the claims of the named plaintiffs be typical of the claims held

12   by other members of the class. "The 'test of typicality is whether other members have the same

13   or similar injury, whether the action is based on conduct which is not unique to the named

14   plaintiffs, and whether other class members have been injured in the same course of conduct.'"

15   *In re Wash. Mut*., 276 F.R.D. at 665 (*quoting Ellis*, 657 F.3d at 984).  "Under the rule's

16   permissive standards, 'representative claims are typical if they are reasonably co-extensive with

17   those of absent class members; they need not be substantially identical.'" *Id.* (*quoting Hanlon*,

18   150 F.3d at 1019).

19        **Mileage Overtime Claim**:  Each named Plaintiff has a mileage overtime claim.[30]  Each

20   Plaintiff and putative class member's injury is the same—i.e., absence of a uniform rate per mile

21   that equates to the reasonable equivalent of overtime.

22

23   _____
     [30] *See* Dublinski Decl. at ¶¶ 7-15; Erickson Decl. at ¶¶ 8-10, 13-17; Forney Decl. at ¶¶ 9-11, 14-17; Grismer Decl. at
     ¶¶ 8-17; Helmick Decl. at ¶¶ 4-10; Ledesma Decl. at ¶¶ 7-14; Praye Decl. ¶¶ 8-15; Roberts Decl. ¶¶ 7-14; Slack
24   Decl. ¶¶ 9-16; Stuber Decl. at ¶¶ 8-10, 13-16; Ullrich Decl. at ¶¶ 6-13.

**Orientation Claim**:  Plaintiffs Sean Forney and Scott Praye attended the mandatory Orientation for new employees in Sumner, Washington, during the claims period.[31]  Swift's policy of non-payment is applied across the board to all new Washington-based drivers attending Orientation, including Forney, Praye and all putative class members. Consequently, Forney's and Praye's Orientation claims are typical and coextensive with the absent class members' claims.

**In-Truck Training Claim:**  Plaintiffs Sean Forney and Scott Praye also participated in the In-Truck Training Student/Driver program while assigned to Sumner, Washington.[32]  In accordance with Swift's policy, both Forney and Praye were paid a flat daily rate regardless of the number of hours actually worked.  Both Forney and Praye worked over forty hours a week during the training period.  The flat daily rate did not include any earned overtime or even equate to minimum wage.  Until November 12, 2012, this pay policy applied across the board to all Washington-based drivers participating in the training.

**Per Diem Claim:**  Plaintiffs Sean Forney, Richard Erickson, and Dennis Stuber participated in Swift's Per Diem Program that was offered to mileage based drivers.[33]  The program (which was eliminated by Swift in November 2012) deducted ten cents a mile from *every* participating driver's rate and paid back eight and one-half cents.  Because the policy was applied without exception to each participating driver, the injuries are the same for the named plaintiffs as well as the class members.  *See* Swift Per Diem Policy (Exhibit 10 and 11).  Swift cannot assert any defense unique to any particular plaintiff or class members.

---

[31] *See* Forney Decl. at ¶¶ 3, 18-20; Praye Decl. at ¶¶ 3, 16-20.
[32] See Forney Decl. ¶¶ 4, 21-22; Praye Dec. ¶¶ 3-4, 16-20.
[33]See Erickson Decl. at ¶¶ 11, 18-19; Forney Decl. ¶¶ 12, 23-24; Stuber Decl. ¶¶ 11, 17-18.

Plaintiffs' Motion  For Class Certification
And Supporting Brief
Page **14** of **24**

NELSON BOYD, PLLC
411 University Street, Ste 1200
Seattle, WA  98010
(206) 971-7601

**4. The named Plaintiffs and their counsel will fairly and adequately protect the Interests of the Class.**

**(a) The named Plaintiffs are adequate representatives of the Class.**

"To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions:  '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 985 (9th Cir. 2011)(quoting *Hanlon v. Chrysler Corp.*, 150 F.3d1011, 1020 (9th Cir. 1998)).

Each named Plaintiff individually has one or more of the four identified claims, and each named Plaintiff is motivated to pursue his individual claim(s) as well as the same claim(s) on behalf of the putative class.  *See* Plaintiffs' Decls.   Each Plaintiff's interest is aligned with the Class's interests.  Each has affirmed his commitment and interest in prosecuting this case as a class action and his understanding of the basic facts underlying his claims by:  regularly consulting with his counsel, responding to discovery demands, appearing for deposition,[34] executing a declaration in support of the certification motion, and showing no inability or unwillingness to the protect the class or to pursue the action.  *Id.*

**(b) Plaintiffs' counsel are adequate to service the litigation needs of the Class and to prosecute the Class's claims.**

Plaintiffs' counsel should be generally experienced in and able to handle the type of litigation before the court. This Court must consider the abilities of both the attorneys who represent the class representatives and the class representatives themselves.  *Carpenters Loc. 899 v Phoenix Assoc.*, 152 F.R.D. 518, 523 (S.D.W. Va. 1994).  Plaintiffs' counsel has extensive

---

[34] With the exception of Richard Praye, which was scheduled but not taken due to travel complications.  He was re-offered for deposition the week of June 24, but defense counsel opted not to take the deposition during that time.  Mr. Praye has executed a declaration in support of this class certification.

Plaintiffs' Motion  For Class Certification
And Supporting Brief
Page **15** of 24

NELSON BOYD, PLLC
411 University Street, Ste 1200
Seattle, WA  98010
(206) 971-7601

experience certifying, litigating, trying, and settling class actions.  Moreover, Plaintiffs' counsel

has been found by many state and federal courts to be fair, able, and experienced class advocates.

Counsel for the Plaintiffs include lawyers from The Cochran Firm-Birmingham, The

Cochran Firm-Dothan, and Nelson Boyd, PLLC, in Seattle, Washington. The lawyers appearing

in this matter from these offices collectively possess decades of experience, in a wide range of

litigation, including numerous Rule 23 class action cases and FLSA class action cases.  *See* Decl.

of J. Taylor, Decl. of R. Camp,  Decl. of J. Boyd.  Since undertaking this action on behalf of the

named Plaintiffs and putative class, Counsel has spent hundreds of hours investigating the

claims, prosecuting discovery, and committing substantial resources to the prosecution of the

Plaintiffs' claims.

**C.      Plaintiffs meet the requirements for certification under Rule 23 (b)(3).**

Plaintiffs seek certification under Rule 23(b)(3) because common questions predominate

over questions, if any,  affecting only individual members and because a class action is superior

to individual adjudication of the claims. Fed. R. Civ. P. 23(b)(3).  "Both the predominance and

superiority requirements were added to the Federal Rules to 'cover cases' in which a class action

would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as

to persons similarly situation, without sacrificing procedural fairness or bring about other

undesirable results."  *Troy v. Kehe Food Distributors, Inc.,* 276 F.R.D. 642, 655 (2011)(*quoting*

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 615 (1997)).

**1.      Adjudicating the common issues will achieve judicial economy.**

"A central concern of the Rule 23(b)(3) predominance test is whether 'adjudication of

common issues will help achieve judicial economy.'" *Ginsburg v. Comcast Cable*, 2013 W.L.

1661483 (W.D. Wash.) (quoting *Vinole v. Countrywide Home Loan, Inc.,* 571. F.3d 935, 944 (9th

Plaintiffs' Motion  For Class Certification
And Supporting Brief
Page **16** of **24**

NELSON BOYD, PLLC
411 University Street, Ste 1200
Seattle, WA  98010
(206) 971-7601

Cir. 2009)). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *In re Wells Fargo Home Morg Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1065 (2007).  All of the key issues in the instant action, i.e., whether Swift has violated Washington's wage and hour laws, can be and should be resolved for all members of the class in a single adjudication.  None of the claims is subject to an individualized defense and each is amenable to adjudication on a representative basis.

Plaintiffs are challenging Swift's uniform policy concerning overtime for Washington-based drivers compensated on a per mileage basis.  The policy applies the same way to every Washington-based interstate driver.   Swift's defense is that the mileage rate (regardless of what mileage pay matrix is applicable and where the driver falls within the matrix) that it pays to its drivers incorporates overtime pay.[35]  But this defense, without more, is insufficient to satisfy Washington overtime law.  Washington law only allows an employer to escape traditional overtime requirements of time and a half for every hour worked after 40 in a week by verifying that its mileage rates uniformly incorporate an amount reasonably equivalent to overtime pay. RCW 49.46.130(2)(f). Swift must "maintain records indicating the base rate of pay, the overtime rate of pay, the hours worked by each employee for each type of work, and the formulas and projected work hours used to substantiate any deviation from payment on an hourly basis." WAC 296-128-011(1).  To date, Swift has not provided any evidence of any formula or methodology to substantiate its claim that its mileage rates include "reasonably equivalent overtime."[36]

---

[35] Rohwer Depo. at 41:13-41:18 (Exhibit 12).
[36] Rohwer Depo. at 232:12-232:17, 235:13-236:24 (Exhibit 12); Koogle Depo. at 62:15-63:05 (Exhibit 2).

NELSON BOYD, PLLC
411 University Street, Ste 1200
Seattle, WA  98010
(206) 971-7601

Swift has not provided any evidence establishing that it actually calculated a reasonably equivalent overtime rate for any of its mileage pay matrices, as required by WAC 296-128-012. Nevertheless, assuming Swift is able to cobble together evidence suggesting it used a formula or other methodology when setting its pay rates, a jury will determine—on a representative basis— whether Swift has fulfilled its obligations under Washington law.

Just as Swift's liability can be resolved on a class-wide basis, so too can the other three claims. Orientation is mandatory and the same topics are covered at each Orientation with every new employee. The issue is only whether this mandatory Orientation is "work" subject to minimum wage requirements. In-truck training is also mandatory for mileage-based drivers and the same daily flat rates apply to every student driver regardless of the total hours worked. The issue is only whether the flat rates meet the minimum wage and overtime laws. Likewise the Per Diem claim is easily addressed on a class-wide basis—the jury must only decide whether Swift has improperly retained funds from the Per Diem program, a determination that would resolve the liability issue for the entire class.

While each class member's amount of compensation will vary, this does not undermine the efficacy of trying this case as a class action. Once liability is established, damages can be easily calculated by the data contained in Swift's records.[37] In fact, this would be a straightforward computation that could be carried out by a claims administrator.[38]

---

[37] Rohwer Depo. at 29:21-32:03, 33:05-33:18 (Exhibit 12).

[38] *In re Wells Fargo*, 527 F. Supp. 2d 1053, 1065 (N.D. Ca. 2007) ("In the context of overtime pay litigation, courts have often found that common issues predominate where an employer treats the putative class members uniformly with respect to compensation, even where the party opposing class certification presents evidence of individualized variations."); see also *Troy v. Kehe Food Distributors, Inc.*, 276 F. Supp. 642, 657 (W. D. Wash. 2011)(Finding that the questions about whether the Minimum Wage Act exempt applied, whether it applied to hours worked out of state and whether the defendant employer had acted willfully predominated over any individualized questions that might arise in determining damages for the member of the employee class).

Plaintiffs' Motion  For Class Certification
And Supporting Brief
Page **18** of 24

NELSON BOYD, PLLC
411 University Street, Ste 1200
Seattle, WA  98010
(206) 971-7601

## 2.   A Class Action Is the Superior Means of Adjudicating This Controversy.

To certify this action under Rule 23(b)(3), the Court must also find that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. Pro. 23(b)(3). The Court must consider (A) the interest of Class members in individually controlling the prosecution of claims, (B) the extent and nature of any litigation already commenced by Class members, (C) the desirability of concentrating the suit in the particular forum, and (D) any difficulties that may be encountered in managing the action. Rule 23(b)(3)(A)–(D).

### (a) Class treatment allows for the fair and efficient resolution of common claims that would otherwise go without redress.

Class certification is warranted in this case. Other courts applying Rule 23(b) have found similarly situated wage and hour cases to be worthy of class certification. Washington state courts certify classes of employees that allege inadequate wages under the Washington Minimum Wage Act (WMA). *See, e.g., Pellino v. Brink's, Inc.,* 164 Wash. App. 668, 651(2011); *Barnett v. Wal–Mart Stores, Inc.,* 133 Wash. App. 1036, 2006 WL 1846531 [2006]; *Hill v. Garda CL Northwest, Inc.,* 169 Wash. App. 685 (2012). Moreover, other federal district courts for the ninth circuit have effectively utilized class certification to adjudicate wage and hour claims. *See, e.g., Troy v. Kehe Food Distributors, Inc.,* 276 F.R.D. 642 (W.D.Wash.2011); *Wren v. RIS Inventory Specialists*, 256 F.R.D. 180, 208–09 (N.D.Cal. 2009). Finally, district courts from other circuits grant certification to employees analogous to the plaintiffs in this case. *See, e.g., Morangelli v. Chemed Corp.*, 275 F.R.D. 99 (E.D.N.Y.2011).

It is likely that most Class members lack the resources necessary to seek legal redress against Swift for its alleged misconduct and, without class treatment, would have no effective remedy for their alleged injuries.  Given the large number of Class members and the multitude of

Plaintiffs' Motion  For Class Certification
And Supporting Brief
Page **19** of **24**

NELSON BOYD, PLLC
411 University Street, Ste 1200
Seattle, WA  98010
(206) 971-7601

1   common issues present, a class action is the most appropriate means of adjudicating the claims

2   arising out of Swift's common course of conduct.

3           **(b) This case presents no management difficulties.**

4           "[T]he difficulties likely to be encountered in the management of a class action" are to be

5   considered in making findings on predominance and superiority. *Windham v American Brands,*

6   *Inc.*, 565 F.2d 59, 65 n.7 (4th Cir. 1977).  This case presents no management issues that would

7   preclude class treatment.

8           **i.   Liability can be tried using existing documentary evidence, employer**
            **testimony, class representative witnesses, and class members.**

9

10          "Courts commonly allow representative employees to prove violations with respect to all

11  employees." *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 701 (3d Cir. 1994).  Plaintiffs are not

12  required to prove that the experiences of the Class members are uniform. The standard is only

13  that the all Swift employee drivers, whether assigned to Grandview or Sumner, were paid

14  principally by the mile.  The rate per mile could vary, based upon trip length, type of load, and

15  years of experience, but, all similarly situated drivers were paid exactly the same mileage rates at

16  any given time under various pay matrices.  However, up until September 2011, no distinction

17  was made regarding the mileage rates paid to Washington based drivers compared to similarly

18  situated drivers in any other state.

19          **ii.  Damages can be calculated on a class basis through the use of existing**
            **data either at trial or by way of a special master.**

20          The fact that those damages may be varied does not preclude class certification. *Blackie*

21  *v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)). This case is uniquely suited for class

22  determination.  Where the damage determinations amount to what may be characterized as

23  "virtually a mechanical task," "capable of mathematical or formula calculation," the existence of

24

NELSON BOYD, PLLC
                                           411 University Street, Ste 1200
                                           Seattle, WA  98010
                                           (206) 971-7601

1  individualized claims for damages seems to offer no barrier to class certification on grounds of

2  manageability. *Windham v American Brands, Inc.*, 565 F.2d 59, 65, 68 (4th Cir. 1977).

3         For each category of claims, i.e., Mileage Overtime, Orientation/In-truck Training, Per

4  Diem, the damage calculations are all "virtually a mechanical task," "capable of mathematical or

5  formula calculation," using readily retrievable files and data.

6         WAC 296-128-012 provides the formula for determining amounts to be added to Swift's

7  base mileage rates to arrive at a mileage rate paid uniformly over all miles driven for each base

8  mileage rate used by Swift.  The "formula is recommended for establishing a uniform rate of pay

9  to compensate work that is not paid on an hourly basis and for which compensation for overtime

10 is included."  WAC 296-128-012(1)(a).  The formula involves a class wide approach to

11 determining mileage rates.[39]

12        All records necessary for these calculations are readily available and can easily be

13 performed on a global basis once the data is provided.  Swift has all pay records reaching back

14 past the claims period are available for all drivers assigned to Washington Positions.  This data

15 includes all miles driven, all mileage rates paid, deductions and any other relevant pay data.

16 Truck data is also available to determine average speeds for calculations. Driver logs are

17 available as another source of hours worked.

18        Applying the Washington minimum wages in effect at the time of the respective

19 orientation classes for 2.5 to 3 days of 8 hour sessions will allow for orientation damage

20 calculation.  Records for all participants in Swift's Orientation Program during the claims period

21 are available.[40] Student driver compensation only requires a simple mathematical calculation of

---

[39] The reasonably equivalent overtime mileage pay rates are determined using at least 26 weeks of data within the most recent two year period from similarly situated persons performing the same type of work over that representative period of time in order to project overtime hours.  WAC 296-128-012(1)(b).
[40] Rohwer Depo. at 29:21-32:03, 33:05-33:18 (Exhibit 12); Koogle Depo. at 291:19-292:07 (Exhibit 2).

Plaintiffs' Motion  For Class Certification
And Supporting Brief
Page **21** of **24**

NELSON BOYD, PLLC
411 University Street, Ste 1200
Seattle, WA  98010
(206) 971-7601

1    determining the difference between what was paid verses what should have been paid if

2    Washington's minimum wage applicable at the time was utilized for hours worked (including

3    time and one-half for overtime).  The only variable is the hours for each student during the 2 to 6

4    week program.  The hours can be derived from the logs for each student driver (which are in

5    Swift's possession) Koogle Depo. at 291:19-292:07 (Exhibit 2) and/or the time records for the

6    Mentor assigned to each qualifying class member.

7          The Per Diem damage calculations for each class member require only a determination of

8    the amount withheld from each participating driver during the claims period, a number that is

9    recorded in Swift's financial record for each driver.  However, even if the Defendants' records

10   are inadequate to establish damages to a certainty, that fact cannot be used as a hurdle or a wall

11   to prevent class certification.  *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)).

12   Courts have long employed class-wide aggregate damage formulas in a variety of contexts, thus

13   obviating the need for individual damage determinations. As Professor Newberg explains:

14          [W]hen monetary relief is sought, and data from each class member is required to
            assess individual recovery entitlement, it is still possible in most cases for the
15          class representative to develop and prove common guidelines or formulae that
            will apply to determine the measure of recovery for each individual proof of
16          claim.

17   Newberg § 10.01.

18          **D.  Constitutionally Sound Notice Can Be Provided to Class Members**

19          To protect their rights, absent class members must be provided with the best notice

20   practicable when an action is certified under Rule 23(b)(3). There is no requirement that all class

21   members receive actual notice by mail or other means; rather, individual notice must be provided

22   only "to those class members who are identified through reasonable efforts." *Eisen v. Carlisle &*

23   *Jacquelin*, 417 U.S. 156, 174–75, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974).  Where class

24

Plaintiffs' Motion  For Class Certification
And Supporting Brief
Page **22** of 24

NELSON BOYD, PLLC
411 University Street, Ste 1200
Seattle, WA  98010
(206) 971-7601

1  members cannot be so identified or located, notice through publication targeted at likely class

2  members is sufficient. *See Manual for Complex Litigation (Fourth*) § 21.311 (2008).

3      Here, class members can be reasonably identified through Swift's employment and

4  payroll records, and direct notice can be provided to most class members via U.S. Mail. To the

5  extent necessary, Plaintiffs can provide supplemental notice by publication in periodicals that are

6  likely to reach those members who do not receive direct notice.

7  <center>**IV. CONCLUSION**</center>

8      For the reasons set forth above, Plaintiffs ask that the Court to grant this motion for

9  certification.

10  Dated:  June 28, 2013                        Respectfully submitted,

11                                 /s/ Joseph D. Lane

12                                 **JOSEPH D. LANE**
                               **THE COCHRAN FIRM-DOTHAN, PC**
                               jlane@cochranfirm.com

13                                 **J. FARREST TAYLOR**
                               ftaylor@cochranfirm.com

14                                 111 W. Main Street
                               Dothan, AL 36301

15                                 (334) 673-1555
                               *Attorneys for Plaintiffs*

16

17                                 **JEFFREY D. BOYD, WSBA #41620**
                               boyd@nelsonboydlaw.com

18                                 **DEBORAH M. NELSON, WSBA #23087**
                               nelson@nelsonboydlaw.com

19                                 **NELSON BOYD, PLLC**
                               **411 University Street, Suite 1200**

20                                 Seattle, WA 98101
                               (206) 971-7601

21                                 *Attorneys for Plaintiffs*

22                                 **ROBERT J. CAMP**
                               **THE COCHRAN FIRM-BIRMINGHAM, PC**

23                                 rcamp@cochranfirm.com

24

Plaintiffs' Motion  For Class Certification
And Supporting Brief
Page **23** of 24

                         NELSON BOYD, PLLC
                         411 University Street, Ste 1200
                         Seattle, WA  98010
                         (206) 971-7601

1929 3rd Avenue North
Suite 800
Birmingham, AL 35203
*Attorneys for Plaintiffs*

### CERTIFICATE OF SERVICE

I, hereby certify that on this 28th day of June, 2013, the foregoing was electronically filed with the Clerk of the United States District Court for the Western District of Washington, Seattle, using the CM/ECF system, which will send notification of such filing to the below counsel:

Rudy A. Englund, Esq.
EnglundR@LanePowell.com
**Lane Powell, PC**
1420 Fifth Avenue, Suite 4100
Seattle, WA  98101-2338

Ellen Brochetti, Esq.
Ebronchetti@sheppardmullin.com
Paul Cowie, Esq.
pcowie@sheppardmullin.com
**Sheppard Mullin Richter & Hampton LLP**
379 Lytton Avenue
Palo Alto, CA  94301-1479

/s/ Joseph D. Lane
**JOSEPH D. LANE**

Plaintiffs' Motion  For Class Certification
And Supporting Brief
Page **24** of 24

NELSON BOYD, PLLC
411 University Street, Ste 1200
Seattle, WA  98010
(206) 971-7601