SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ELLEN M. BRONCHETTI, Cal. Bar No. 226975
ebronchetti@sheppardmullin.com
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:  415-434-9100
Facsimile:  415-434-3947

PAUL COWIE, Cal. Bar No. 250131
pcowie@sheppardmullin.com
379 Lytton Avenue
Palo Alto, CA 94301-1479
Telephone: 650.815.2600
Facsimile: 650.815.2601

Attorneys for Defendant SWIFT TRANSPORTATION CO. OF ARIZONA, LLC

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT TACOMA

| | |
|---|---|
| TROY SLACK, JACOB GRISMER, RICHARD ERICKSON, and SCOTT PRAYE, Individually, and as Putative Class Representatives,<br><br>Plaintiffs,<br><br>v.<br><br>SWIFT TRANSPORTATION CO. OF ARIZONA, LLC, and SWIFT TRANSPORTATION, d/b/a SWIFT TRANSPORTATION, d/b/a/ SWIFT,<br><br>Defendants. | Case No. 3:11-cv-05843-BHS<br><br>**DECLARATION OF JEREMY PARKER SR.**<br><br>[Complaint Filed: September 9, 2011] |

I, Jeremy Parker Sr., declare under penalty of perjury that the facts set forth in this declaration are true and correct and based on my own personal knowledge. If called as a witness, I could and would competently testify thereto.

1. I am currently employed by Swift Transportation Co. of Arizona, LLC ("Swift") as a truck driver, assigned out of the Sumner, Washington terminal. I began working for Swift in August 13, 2010. So I'm coming up on my three year anniversary.

2. Last July I relocated to the Lancaster, Texas, because my dad asked me to do that. So I was assigned to Lancaster, Texas for five months. I teamed with my dad for five months doing Target dedicated.

3. I went back to the Sumner terminal in December, 2012 because I wanted to go back to OTR (over-the-road).

4. I attend orientation in Sumner, Washington in August 2010. I think it lasted two days. From what I remember I saw a couple of videos. I remember a safety video. A lot of time was spent waiting for people to come in to teach the classes. I also remember doing a DOT Drive Test, DOT physical, and DOT drug screen.

5. I had to pass the drive test, drug screen and physical to get a job. It was the same at Warner and Schneider. If I didn't pass the tests I would not have been hired by any of these companies.

6. I think I was paid $50 per day for attending orientation at Swift.

7. I did not do any work for Swift during orientation. I sat in a class.

8. I was bored in orientation because I knew it all already. It was really just a refresher for me. I didn't think there was anything new.

9. At the time I was a smoker and I took frequent smoke breaks.

10. I have been a driver for six years. I drove for Warner Enterprises and then for Schneider. I came to Swift because I wanted a terminal that was real close to home. At the time I was living fifteen miles from the Sumner terminal. There were two other trucking companies that wanted to hire me, but Swift was closer.

11. I had enough experience that I could get my own truck without having to drive with a Mentor. I have not been a Mentor at Swift.

12. In the past I have been on per diem. My wife explained it to me and she wants to get me back on per diem. I don't remember what it is.

13. I have driven every state but Maine or New Hampshire. I've been up the 81 on the eastside of New York and I've been into Connecticut. I haven't been to Florida or Rhode Island.

14. I have driven in New Jersey, Maryland, Virginia and all of the other states except for the ones I just said.

15. The longest I have been gone from Washington in one go was five weeks. Like right now, my wife and I are out on the road enjoying our honeymoon (we got married six days ago). So we haven't put "home" time in yet and might stay out on the road for a month enjoying ourselves.

16. When I worked out of Lancaster, Texas, I didn't work in Washington at all. I worked Louisiana, Arkansas, Kansas and Oklahoma.

17. When I went back to Sumner I went back to OTR driving meaning I could go anywhere in the US, besides Hawaii and Alaska.

18. I am paid by the mile. I don't think I get stop pay when I drive OTR. When I'm dedicated I did get a stop pay. I think it was $12 per stop. That was for Target.

19. I also received a higher mileage rate when I have drove a reefer (a refrigerated unit).

20. I have done loading and unloading and I was paid $12 an hour.

21. I have received performance pay from Swift for driving a certain number of miles.

22. I have not been asked to sign any form by Swift regarding overtime.

23. I have a Washington CDL. When I worked in Texas I also had a Washington CDL.

24. I live in Washington State now.

25. Some weeks I work 30 hours per week. It can depend on where I am and what is happening. I remember sitting waiting to get a load for eight hours. During that time I could do whatever I wanted because I was not under dispatch.

26. I typically run anything from 2,000 to 3,200 miles per week.

27. My wife may start driving with me in a team. If she does that then we'll be away from Washington for even longer.

28. I am providing this declaration freely and voluntarily. Swift's attorneys have told me that I do not have to provide this declaration and whether I choose to do so or not, the decision will not affect my employment status. I have had the opportunity to review the contents of this

1 declaration and to make any changes I believe necessary so that it is accurate. I understand that
2 Swift will use this declaration in *Slack v. Swift Transportation Co.*, a case already described to me.
3      I declare under penalty of perjury under the laws of the State of California that the
4 foregoing is true and correct.
5      Executed on July 18, 2013 at Fontana, California.

By *[signature]*

JEREMY PARKER SR.

SMRH:409660548.1

-4-

## VOLUNTARY INTERVIEW CONSENT FORM

1.  I am an attorney representing Swift Transportation Co. of Arizona, LLC ("Swift"), in a lawsuit brought by current and former employee drivers who claim primarily that they and other drivers were not properly paid minimum wage and overtime in connection with orientation and in-truck training, their mileage rate did not include overtime under Washington law, they had their wages unlawfully deducted under Swift's per diem program, and they were not properly paid upon termination. The lawsuit is entitled *Troy Slack et,. al. v. Swift Transportation Co.* Plaintiff is seeking unpaid wages, penalties and other monetary damages and equitable relief for these alleged wrongs. This case is brought not only on behalf of the Plaintiffs, but also on behalf of a class of "similarly situated" Washington-based drivers who have worked for Swift after July 18, 2008. As a result, at some point, you may be eligible to join the class action lawsuit and, if the lawsuit is successful, collect some money. I want you to know this so that you can make an informed decision about whether you want to talk to me or not.

2.  Before we talk, I need to know if you have a lawyer regarding any matters involving Swift. If you are represented by, or consulting with, an attorney in any matter involving Swift please tell me. If that is the case, the rules of professional ethics for attorneys do not allow me to interview you today. I simply want to confirm that you are not presently represented by counsel in any type of a legal action involving Swift.

3.  Because you are not currently represented by a lawyer, I want to talk to you about the orientation period you went through at Swift, any in-truck training you may have undertaken at Swift (also known as the student-mentor program), your types and rates of pay and Swift's per diem program, as well as the lawsuit generally. We are gathering these facts so that we can effectively prepare Swift's defenses to the claims in the lawsuit. The information may be used to defend against the lawsuit.

4.  It is important, at the outset, that you understand that as a lawyer for Swift, I represent Swift and not you. I am not your lawyer and I do not represent your interests. Because I represent Swift and not you, I also cannot give you any legal advice about any questions or concerns that you may have about any claims you may believe you have or your relationships with Swift.

5.  Also, because I represent Swift and not you, and because there is a lawsuit that is a potential class action and you are a potential class member, information you share with me may be shared with Swift and used in the lawsuit in a way that could adversely affect any potential claim that you might have against Swift, and may limit your potential recovery.

6.  This interview is entirely voluntary. You do not have to talk to me. If you do talk to me and answer my questions, it is entirely voluntary on your part. You can also choose to answer just some of the questions that I ask, or just part of them. It is entirely up to you. You can also end our discussion at any time you want; you simply need to tell me that you want to end the interview and it will end. Regardless of whether you decide to participate in the interview or not, Swift assures you that the services you perform will not be affected in any way;

you will not suffer any harm if you do or do not talk to me and you will not receive any benefits of any kind if you do or do not talk to me.

7. If you do agree to talk to me, Swift will not penalize, discriminate or retaliate against you in any way based on the answers you give me. Swift will not subject you to any adverse actions, retaliation, harassment, threats, coercion or duress because of anything you say during the interview. Similarly, you will not receive any benefit from Swift of any kind based on the answers that you give.

8. We intend to compile the information you provide to me with information from other interviews. We will then use it to provide legal advice to Swift, including the preparation of its defense in the lawsuit. If you are contacted by an attorney representing the individuals who brought the lawsuit and asked by him or her to provide information about your work for Swift, you are free to do so, and you can also refuse to do so. Again, just like this interview, the choice to be interviewed is entirely yours.

9. After the interview, I may ask you to sign a statement that describes or summarizes some or all of what you have told me about your experiences with Swift's orientation program, the in-truck training, your types and rates of pay, the per diem program, the lawsuit or your other experiences as a Swift driver. Like your interview, providing this statement is completely voluntary. If you do decide to provide a statement, it is very important that anything you sign be entirely accurate, so please make sure that you correct any information that is not correct in the statement. By signing the statement, you should understand that you may be affecting your rights in the lawsuit, including waiving your right to participate in the class action or receive any money as a result of it. The statement may be used in the lawsuit to defend Swift against the drivers' claims.

10. If you decide to answer my questions, I want to emphasize that I only want to know the truth from you. There are no right or wrong answers. We only want to hear your honest, candid responses. Please do not give me an answer that you think Swift, or I would like to hear. Just tell me the exact truth whether or not you think that Swift or I would like it.

## WITNESS ACKNOWLEDGMENT

I have read this Voluntary Interview Consent Form and I understand it. I acknowledge and understand that I am a potential member of the class that the named Plaintiffs in *Slack et. al. v. Swift Transportation Co.* are seeking to represent. I confirm that I am not currently speaking to, or represented by, a lawyer regarding my employment with Swift, or any other claim that I believe I might have against Swift. I agree to be interviewed regarding the topics described above, and I fully understand that my answers may be used by Swift in a way that may adversely affect any claim I might pursue against them, and may limit my potential recovery. I agree to answer all questions truthfully and acknowledge that I am participating in this interview entirely of my own free choice and without any threats, intimidation, coercion or promises of benefits to me. If I provide a statement I understand that it might be used to defend Swift in the lawsuit.

Signature: /s/ Jeremy Parker Sr  Print Name: Jeremy Parker Sr.  Dated: 7-18-13