UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TROY SLACK, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SWIFT TRANSPORTATION CO. OF ARIZONA, LLC, <br><br> Defendant. | CASE NO. C11-5843 BHS <br><br> ORDER |

This matter comes before the Court on Plaintiffs Eric Dublinski, Richard Erickson, Sean Forney, Jacob Grismer, Timothy Helmick, Henry Ledesma, Scott Praye, Gary Roberts, Troy Slack, Dennis Stuber, and Robert Ulrich's ("Plaintiffs") motion for partial summary judgment (Dkt. 215), motion to exclude in part the expert reports and testimony of Angela Sabbe (Dkt. 217), motion to strike improper expert report of Robert Crandall (Dkt. 219), and motion to exclude Mr. Crandall (Dkt. 245); and Defendant Swift Transportation Co.'s ("Swift") motion to exclude expert Dwight Steward Ph.D. (Dkt.

246).  The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby rules as follows:[1]

## I. PROCEDURAL AND FACTUAL BACKGROUND

On November 20, 2013, the Court certified a class of truck drivers who were paid by the mile and worked more than forty hours per week and a subclass of drivers who were allegedly not paid for attending orientation.  Dkt. 83 at 11.  Swift contends that it paid the reasonable equivalent of overtime ("REOT") and that Plaintiffs have failed to submit admissible evidence on their orientation pay claim.  Dkt. 237.

Swift retained Ms. Sabbe "to evaluate the reasonable equivalence between pay received by mileage drivers and pay they would have received as an hourly driver." Dkt. 218-1 ¶ 5.  Ms. Sabbe is "a leader in the complex data analytics practice in Los Angeles and specialize[s] in the application of financial and complex data-intensive analyses to legal issues."  *Id.* ¶ 2.

On September 15, 2016, Ms. Sabbe produced a report contending that class members earned more as mileage-paid drivers than they would have as hourly-paid drivers.  Specifically, Ms. Sabbe concluded as follows:

> From 2011 to 2016, class members earned, on average, between 2.8% and 19.8% more per hour as mileage-paid drivers than they would have earned if they had been paid as an hourly driver. From 2008 to 2010, class members earned, on average, between 4.5% and 12.4% less than they would have earned as an hourly-paid driver.

---

[1] While the parties have identified various procedural errors with regard to filing requirements and timing of the motions, the Court declines to rule on the motions on these grounds.  Doing so would only delay the inevitable because the substantive issues must be addressed at some point prior to trial.

From 2012 to 2016, class members' total earnings were, on average, between 1.7% and 17.6% more than the total earnings they would have earned as hourly-paid drivers. From 2008 to 2011, the class of mileage-paid drivers earned approximately 7% less than they would have earned as hourly-paid drivers.

*Id*. ¶¶ 7(i)–(ii).

On October 17, 2016, Plaintiffs' expert, Dr. Steward, issued his report. Dkt. 218-7. As part of the report, Dr. Steward provided "a preliminary analysis of the defendant's expert report prepared by Ms. Angela Sabbe." *Id*. ¶ 7. Dr. Steward opined in part as follows:

> Ms. Sabbe failed to provide an apples-to-apples comparison of the rates earned by the class members to her identified comparison drivers who are not class members. Further, Ms. Sabbe compared the class members to a nonexistent position at Swift. Ms. Sabbe also appears to make assumptions which effectively downward skew the average rate earned by the class members. A comparison to publically available data further shows that the comparison rate used by Ms. Sabbe is significantly lower than the average or median for truck drivers in the State of Washington. These issues are discussed in more detail below.
> 
> \*\*\*
> 
> As described above, and included in the Sabbe Report, Ms. Sabbe compared the average effective hourly rate each year of the class members she analyzes to the weighted average of the minimum rates for each position she understands to have similar job duties to class members each year. Although Ms. Sabbe attempted to justify the use of the minimum rate for each position during each year due to the relatively short median tenure of the class members, she also stated "unlike mileage rates, which have established increases based upon a driver's experience and additional responsibilities, the hourly pay rates for Washington based, hourly paid drivers are discretionary and based on a variety of factors including market conditions and are set at or above the minimum wage." She clearly stated that the hourly rate paid by Swift to its hourly drivers need not be based on experience and then inappropriately attempted to justify the use of minimum hourly rates based on short tenure. Ms. Sabbe's use of minimum hourly rates as a point of comparison is nonsensical based on her own explanation.

> \*\*\*
> Ms. Sabbe failed to compare the class members to an hourly position which exists at Swift. Ms. Sabbe merely compares the earnings and average hourly rate of the class members to the weighted average of certain hourly driving positions at Swift. Ms. Sabbe does not compare the positions held by the class members to an hourly counterpart position. Mileage-paid dedicated drivers at Swift work more hours on average than Ms. Sabbe calculates in her analysis, overestimating the effective rate earned by the class members.
> \*\*\*
> Mileage-paid dedicated drivers at Swift work more hours on average than Ms. Sabbe calculates in her analysis, overestimating the effective rate earned by the class members.

*Id.* ¶¶ 53, 56, 63, 66.

On March 10, 2017, Ms. Sabbe issued a Rebuttal Report. Dkt. 218-2. In this report, Ms. Sabbe contends that "Dr. Steward's criticisms are unsubstantiated and inconsistent." *Id.* at ¶ 7(iv). Moreover, Ms. Sabbe "made certain revisions to [her] initial analysis." *Id.* ¶ 34. Based upon these revisions, Ms. Sabbe concluded as follows:

> On average, across the class period, mileage-paid drivers earned between -2.5% and 11.2% more per hour more than they would if they had been paid as an hourly driver in 2008, 2009, and between 2011 and 2016, while in 2010, the hourly rate variance was approximately 6.0%. As indicated, overall, across the class period, dedicated drivers earned 4.5% more as mileage-paid drivers than they would have as hourly-paid drivers, including overtime, for the same hours worked.

*Id.* ¶ 45.

On March 10, 2017, Swift also produced the expert rebuttal report of Robert Crandall. Dkt. 220-1 ("Crandall Report"). Mr. Crandall attacks Dr. Steward's report, offers opinions in support of Ms. Sabbe, and offers his own opinions. *Id.* Specifically, Mr. Crandall listed the questions he would address as follows:

> 1) Whether the reasonable equivalency calculation methodology reflected on the Washington Department of Labor and Industries ("DLI") website demonstrates that between 1 and 3 cents per mile above the base rate would meet Washington's reasonably equivalent overtime threshold; 2) Whether the "base rate" in the State of Washington's REO calculation for truck Drivers only includes the mileage rate and does not consider other elements of pay; 3) whether the available data suggests that the base rates for Washington State dedicated Drivers were higher than the nation-wide base rates for over-the-road ("OTR") Drivers at Swift; 4) Whether the data indicates that flat rate payments, in addition to base mileage pay, may meet the REO threshold; 5) Whether the variation in customer specific pay plans leads to variation in the rates that are paid to Drivers; 6) Whether the data supports Dr. Steward's critique of Ms. Sabbe's base hourly rate analysis; 7) Whether Dr. Steward's analysis of U.S. Bureau of Labor Statistics data overstates the average hourly rate for truck Drivers in the State of Washington; 8) Whether Dr. Steward accurately evaluated Washington State's recommended formula for calculating overtime due to dedicated Drivers; and finally, 9) I have been asked to comment upon whether class-wide adjudications in situations of wide variation that replace the individual employee's actual experience with an average can lead to errors in liability determinations and damages.

*Id.* at 6. As explained by Mr. Crandall, only points six, seven, and eight directly refer to Dr. Steward, and point nine appears to attack the Court's legal conclusions certifying the class.

On April 3, 2017, Plaintiffs filed a motion for summary judgment on their overtime and orientation pay claims (Dkt. 215), a motion to exclude the report and testimony of Ms. Sabbe (Dkt. 217), and a motion to exclude the improper report of Mr. Crandall (Dkt. 219). On April 18, 2017, Swift responded to the motions to exclude. Dkts. 225, 227. On April 21 and 26, 2017, Plaintiffs replied. Dkts. 232, 235. On May 1, 2017, Swift responded to the motion for partial summary judgment. Dkt. 237. On May 15, 2017, Plaintiffs replied. Dkt. 240.

On June 20, 2017, the Court set a hearing on the motions to exclude, renoted all the pending motions, and invited additional motions to exclude. Dkt. 243.

On June 29, 2017, Plaintiffs filed a motion to exclude Mr. Crandall (Dkt. 245) and Swift filed a motion to exclude Dr. Steward (Dkt. 246). On July 11, 2017, both parties responded. Dkts. 248, 250. On July 14, 2017, both parties replied. Dkts. 251, 252.

On July 18 and 19, the Court held the hearing on the motions to exclude. Dkts. 254, 255. At the end of the hearing, the Court requested supplemental briefing. On August 4, 2017, the parties filed opening supplemental briefs. Dkts. 262, 264. On August 11, 2017, the parties filed supplemental responses. Dkts. 265, 266.

## II. DISCUSSION

**A. Washington Overtime Pay**

Washington law requires all employers to pay their employees overtime for hours worked over forty in a workweek. RCW 49.46.130(1). The statute provides a few express exceptions, including one for trucking companies like Swift. Specifically, the overtime law does not apply to a truck driver "if the compensation system under which the truck or bus driver is paid includes overtime pay, reasonably equivalent to that required by this subsection, for working longer than forty hours per week." RCW 49.46.130(2)(f). "[T]he employer bears the burden of proving this 'exempt' status." *Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wn.2d 291, 301 (2000). "Exemptions from remedial legislation, such as [RCW 49.46.130(1)], are narrowly construed and applied

only to situations which are plainly and unmistakably consistent with the terms and spirit of the legislation." *Id*.

The Washington Department of Labor and Industries ("L&I") has promulgated a rule governing overtime for truck drivers. The rule provides that an employer may "establish a rate of pay that is not on an hourly basis and that includes in the rate of pay compensation for overtime." WAC 296-128-012(1)(a). The employer may use any pay formula "that, at a minimum, compensates hours worked in excess of forty hours per week at an overtime rate of pay and distributes the projected overtime pay over the average number of hours projected to be worked." *Id*. However,

> In using a formula to determine a rate of pay, the average number of hours projected to be worked and the average number of work units accomplished per week shall reflect the actual number of hours worked and work units projected to be accomplished by persons performing the same type of work over a representative time period within the past two years consisting of at least twenty-six consecutive weeks.

WAC 296-128-012(1)(b). L&I provides further guidance as follows:

> If the company employs truck drivers who are paid under traditional overtime as well as truck drivers who are or will be paid under a compensation system that the company proposes as reasonably equivalent to traditional overtime, then comparison calculations should be based on similarly situated drivers at the company under both payment methods. For example, a company employs both local drivers who are paid hourly under traditional overtime and line haul drivers who are paid on a mileage basis. For purposes of calculations submitted to L&I, the company should compare for each workweek what each line haul driver's gross pay was relative to what the gross pay would have been if each line haul driver was paid hourly, as if a local driver.

L&I Policy ES.A.8.3.


In 2007, the Washington Supreme Court held that the "overtime provisions of RCW 49.46.130 apply to all hours worked by a Washington-based truck driver engaged in interstate transportation, whether within Washington State or outside the state." *Bostain v. Food Exp., Inc.*, 159 Wn.2d 700, 724 (2007). This decision spawned numerous cases wherein drivers engaged in interstate transportation claimed that their employers did not properly pay overtime. *See*, *e.g.*, *Helde v. Knight Transp., Inc.*, 982 F.Supp.2d 1189 (W.D. Wash. 2013); *Mendis v. Schneider Nat'l Carriers, Inc.*, C15-0144-JCC, 2016 WL 6650992 (W.D. Wash. Nov. 10, 2016); *Mynatt v. Gordon Trucking, Inc.*, 183 Wn. App. 253 (2014). Despite these authorities, the law regarding this specific exemption remains largely unsettled. However, for clarity moving forward, the Court sets forth the following rules of law:

1. Swift bears the burden of proving its employees are exempt from traditional overtime pay. *Drinkwitz*, 140 Wn.2d at 301.

2. Swift may use any formula to compute pay as long as that formula provides the REOT. WAC 296-128-012(1)(a); *Mendis*, 2016 WL 6650992 at *7.

3. Swift was not required to submit its pay formula to L&I for approval. *Id*. (submitting "a request to the [L&I] for a determination as to Schneider's compliance with the reasonable equivalency requirement . . . [is not] required under [RCW] 49.46.130 or WAC 296-128-112.").

4. Swift's "comparison calculations should be based on similarly situated drivers at the company under both [traditional and per-mile] payment methods." L&I

Policy ES.A.8.3, § 3(c)(iii); *Quadrant Corp. v. State Growth Mgmt. Hearings Bd.*, 154 Wn.2d 224, 233 (2005) ("[w]e accord deference to an agency interpretation of the law where the agency has specialized expertise in dealing with such issues.") (quoting *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 136 Wn.2d 38, 46 (1998)).

With these general rules in place, the majority of the briefing is superfluous, and the Court will turn to the genuine disputes.

**B.     Experts**

Plaintiffs move to exclude substantive portions of Ms. Sabbe's report and Mr. Crandall's report as untimely and improper as well as substantively flawed. Dkts. 217, 219, 245. Slack moves to exclude Dr. Steward's report on the merits. Dkt. 246.

A party must disclose its experts "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). "Except as otherwise ordered by the court, a party shall not be permitted to call more than one expert witness on any subject." Local Rules, W.D. Wash. LCR 41(j).

If an expert is timely disclosed, Federal Rule of Evidence 702 allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if it will "help the trier of fact to understand the evidence or to determine a fact in issue." Expert testimony is admissible pursuant to Rule 702 if it is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). In the Ninth Circuit, the trial court acts as a "gatekeeper" by assessing the soundness of the expert's methodology to exclude junk science. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th

Cir. 2014). The inquiry into admissibility of expert opinion is a "flexible one," where "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing *Daubert*, 509 U.S. at 594, 596). "Under *Daubert*, the district judge is 'a gatekeeper, not a fact finder.' When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Id.* (quoting *United States v. Sandoval–Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)).

**1. Mr. Crandall**

Plaintiffs move to exclude Mr. Crandall because Swift's disclosure was untimely and his report is duplicative testimony. The Court agrees to a certain extent because the Crandall Report not only contains opinions in support of Ms. Sabbe's report, but also contains new expert opinions under the guise of a "rebuttal" expert and otherwise irrelevant opinions. For example, section VII of Mr. Crandall's report is irrelevant at this point of the proceeding. This section of the report is titled "Variation In Experiences Impacts The Reliability Of Class-Wide Adjudication" wherein Mr. Crandall opines that "the variation in effective hourly rates in the underlying data demonstrates that one-size-fits all class-wide liability and damages determinations has the potential for significant errors relative to the outcomes Drivers would receive if they were studied individually." Crandall Report ¶ 68. Plaintiffs are not litigating on a "one-size-fits-all" basis, and L&I requires REOT for "similarly situated drivers at the company . . . ." L&I Policy ES.A.8.3, § 3(c)(iii). Moreover, Mr. Crandall's opinion appears to be a disagreement

with the Court's conclusion that the matter is suitable for adjudication on a class-wide basis, which is irrelevant at this stage of the proceeding. Therefore, the Court grants Plaintiffs' motion to exclude this portion of Mr. Crandall's opinion.

Regarding whether Mr. Crandall may offer rebuttal testimony, "a 'defense witness whose purpose is to contradict an expected and anticipated portion of the plaintiff's case in chief can never be considered a 'rebuttal witness,' or anything close to one.'" *Theoharis v. Rongen*, C13-1345RAJ, 2014 WL 3563386, at *3 (W.D. Wash. July 18, 2014) (quoting *Morgan v. Commercial Union Assur. Cos.*, 606 F.2d 554, 555 (6th Cir. 1979)). Swift even concedes that, "[s]hould the Court find that somehow Mr. Crandall's report exceeds the bounds of rebuttal, the obvious remedy is to limit the areas of testimony, not strike the entire report." Dkt. 227 at 9. The Court agrees and will limit Mr. Crandall's testimony such that he may only rebut Dr. Steward. In rebutting Dr. Steward, Mr. Crandall may need to reference Ms. Sabbe, but such testimony shall not be duplicative or veiled support for Ms. Sabbe's analysis. As an expert that was not disclosed until the rebuttal expert deadline, Swift assumed "the risk inherent in relying on a rebuttal expert disclosure." *Theoharis*, 2014 WL 3563386 at *4. Moreover, if Swift identifies Mr. Crandall as its rebuttal expert, Ms. Sabbe will not be allowed to rebut any testimony of Dr. Steward. In other words, Swift must choose one rebuttal expert.

**2. Ms. Sabbe**

In this case, Plaintiffs move to exclude Ms. Sabbe's report because it is irrelevant and unreliable. The Court has reviewed the report and is unable to conclude that Ms. Sabbe engaged in junk science. It is undisputed that computing the REOT is a

developing area of the law and that no single method exists for this calculation. *See*, *e.g.*, *Mynatt*, 183 Wn. App. at 265 ("establishing a base rate of pay may be determined retrospectively, and one method of doing so, adopted by L & I, is utilizing the hourly rates paid to local drivers as the base rates for interstate drivers."). While Ms. Sabbe recognizes some problems with her initial calculations, nothing rises to the level of exclusion. At most, the reports are "[s]haky but admissible" and Plaintiffs may attack the evidence "by cross examination, contrary evidence, and attention to the burden of proof . . . ." *Primiano*, 598 F.3d at 564 (citing *Daubert*, 509 U.S. at 594, 596). Therefore, the Court denies Plaintiffs' motion to exclude Ms. Sabbe's reports.

### 3. Dr. Steward

In general, Dr. Steward provides three opinions: (1) class damages based on the premise that Swift did not pay overtime; (2) a critique of Ms. Sabbe's original opinion; and (3) a comparison of Swift's actual pay to data provided by the Bureau of Labor Statistics ("BLS"). Regarding the first two opinions, Swift has failed to show any legitimate reason to exclude these opinions. Because Swift bears the burden of proving the REOT exemption and is attempting to do so through a retrospective analysis, Dr. Steward bases his damages calculation on the legitimate premise that Swift did not pay overtime. It seems sufficient that no class member's pay stub explicitly shows pay for hours worked in excess of forty hours per week to prove that Swift failed to comply with RCW 49.46.130(1). There is nothing confusing about the premise that Swift failed to pay traditional overtime or the opinion as to damages for this failure. Swift argues that basing an opinion on such a premise turns every similar case into a strict liability case. Dkt. 246

at 7. Not so. The REOT exemption is essentially an affirmative defense because Swift concedes that it did not pay overtime on a traditional basis. Once Plaintiffs rest, Swift will have the opportunity to prove its exemption. If it fails, then damages based on a traditional overtime calculation may be a possible remedy and may be admitted into evidence. Therefore, the Court denies Swift's motion as to this portion of Dr. Steward's opinion.

Similarly, Dr. Steward's criticisms of Ms. Sabbe's opinions are admissible. Swift contends that Dr. Steward's rebuttal of Ms. Sabbe must be excluded because it relates only to Ms. Sabbe's original report. Dkt. 264 at 8–9. Swift's position is fairly disingenuous given that Ms. Sabbe disclosed new opinions in a rebuttal report when they should have been disclosed as a supplement to her original report. Fed. R. Civ. P. 26(e)(2). Although the errors in Ms. Sabbe's original report seem to be a fair ground for cross examination, Dr. Steward should confine his rebuttal to the actual testimony of Ms. Sabbe during trial. Moreover, Swift should clearly identify in its pre-trial disclosures the opinion it intends to offer in its case-in-chief. However, to the extent that Swift seeks to exclude Dr. Steward's rebuttal of Ms. Sabbe's original report at this time, the Court denies the motion because it is unclear which opinion Swift will offer at trial.

Finally, the Court agrees with Swift that Dr. Steward's comparison based on BLS data is unreliable. Dkt 264 at 12–14. Even if this opinion was provided as a "cross-check" of Ms. Sabbe's wage calculations, the limited relevance is substantially outweighed by the potential of confusing the issues and misleading the jury. Fed. R. Evid. 403. The Court recognizes that "[u]sing the local hourly rate that other truck

companies pay their employees has been found to be an acceptable starting base rate." *Mendis*, 2016 WL 6650992 at *7 (citing *Helde*, 982 F. Supp. 2d at 1201–202). However, the BLS data does not appear to reflect trucking companies similar to and competitive with Swift. In other words, the data appears to reflect all trucking companies in the relevant economy, which the Court finds is a suspect "acceptable starting base rate." As such, there is no requirement that Swift pay its drivers the average national or local wage and any calculation based on such data would cause more problems than it was intended to solve. Therefore, the Court grants Swift's motion as to this opinion.

**C. Summary Judgment**

Plaintiffs move for partial summary judgment on Swift's liability for failure to pay overtime and failure to pay attendance during orientation. Dkt. 215. Swift opposes both contentions. Dkt. 237.

**1. Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must

present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**2. REOT**

Plaintiffs move for partial summary judgment on their claim that Swift failed to pay the reasonable equivalent of overtime. Dkt. 215 at 18–20. Plaintiffs, however, implicitly recognize that Ms. Sabbe's report, if admissible, creates material questions of fact on the ultimate issue whether Swift paid the REOT. In fact, the majority of their

reply brief is dedicated to excluding Ms. Sabbe's report because it is unique, irrevocably flawed, and unreliable. Dkt. 240 at 11–16. The Court denies Plaintiffs' motion to exclude Ms. Sabbe and, therefore, denies Plaintiffs' motion for summary judgment as to their overtime claim. The factfinder will determine whether Swift paid the REOT.

### 3. Orientation Pay

Plaintiffs assert that "Swift concedes liability on Plaintiffs' Orientation Pay Claims . . . ." Dkt. 215 at 20. Although Swift does not deny that class members who attended an orientation should receive compensation for their time, Swift contends that Plaintiffs have failed to submit any evidence that any particular class member actually attended orientation and was not paid for his or her time. Dkt. 237 at 20. Swift's response is borderline "gotcha litigation" wherein it appears to have conceded liability on this claim throughout the course of the proceeding only to pull down its white flag for the purposes of responding to a dispositive motion. While the Court is not required to scour the record for relevant evidence, the Court is motivated to narrow the remaining issues for trial. Based upon the declarations on file, Swift's newly asserted resistance is futile. In support of the motion for class certification, both Sean Forney and Scott Praye submitted declarations stating that they attended Swift's two-day orientation without pay. Dkt. 43, ¶ 3; Dkt. 47, ¶ 3. Moreover, Swift admitted that "drivers on the Sabbe Limited Class List are entitled to be compensated for hours spent at company-specific orientations at Swift." Dkt. 216-1 at 27. Based on the uncontested evidence and admission, Plaintiffs have successfully proven liability as to the representative members of the class on this issue. The remaining question is whether liability has been established on a class-wide basis.

On this issue, Swift has failed to submit any evidence to raise a material question of fact whether it compensated class members for orientation pay. In opposing class certification, Swift argued that "there is no evidence of a uniform policy or practice regarding the content or scope of orientation that would allow resolution of the [claim] on a class-wide basis." Dkt. 57 at 26. Swift's current position is that Plaintiffs "have failed to establish a prima facie case." Dkt. 237 at 21. Contrary to Swift's positions, Plaintiffs have submitted evidence of a uniform practice by showing that both representative members were not paid for attendance at orientation. Absent any evidence that Mr. Forney and Mr. Praye's circumstances were unique, Swift has failed to meet its burden on summary judgment. *Matsushita*, 475 U.S. at 586 (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). Therefore, the Court grants Plaintiffs' motion for partial summary judgment on their orientation pay claim.

### III.  ORDER

Therefore, it is hereby **ORDERED** that

1. Plaintiffs' motion to exclude in part the expert reports and testimony of Ms. Sabbe (Dkt. 217) is **DENIED**;

2. Plaintiffs' motion to strike improper expert report of Mr. Crandall (Dkt. 219) and exclude Mr. Crandall (Dkt. 245) are **GRANTED in part** and **DENIED in part** such that Mr. Crandall may be called to rebut Dr. Steward;

3. Defendants' motion to exclude Dr. Steward (Dkt. 246) is **DENIED**; and

4. Plaintiffs' motion for partial summary judgment (Dkt. 215) is **GRANTED in part** on their orientation pay claim and **DENIED in part** on their overtime claim.

Dated this 16th day of August, 2017.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge