# Exhibit A

## <u>CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE</u>

This Class Action Settlement Agreement and Release ("Settlement Agreement" or "Agreement") is made, subject to Court approval, by and between Defendant Swift Transportation Company of Arizona, LLC, and the representative Plaintiffs: (1) Troy Slack; (2) Jacob Grismer; (3) Richard Erickson; (4) Scott Praye; (5) Gary H. Roberts; (6) Robert P. Ullrich; (7) Henry Ledesma; (8) Timothy Helmick; (9) Dennis Stuber; and (10) Sean P. Forney (collectively referred to as "Class Representatives").

### RECITALS

A.     On July 18, 2011, Plaintiffs filed a Class Action Complaint against Defendant Swift Transportation Company of Arizona, LLC in Pierce County Superior Court asserting various wage and hour violations.

B.     In October 2011, Swift removed the case to the United States District Court for the Western District of Washington at Tacoma: *Slack v. Swift Transportation Co. of Arizona, LLC,* Case No. 3:11-cv-05843-BHS (W.D. Wash.) (the "Action").

C.     On or about July 23, 2012, the Court granted Plaintiffs leave to file an amended complaint. On July 27, 2012, Plaintiffs filed their Second Amended Complaint (SAC), which is the operative complaint in this Action.

D.     On August 13, 2012, Swift filed its Answer to the SAC.

E.     On November 20, 2013, the Court entered its order regarding Plaintiffs' Motion for Class Certification, which granted in part and denied in part Plaintiffs' motion ("Class Certification Order"). The Court: (i) certified a Class of Dedicated Drivers for the following claims: Overtime Claim; Orientation Claim; and Per Diem Claim; (ii) appointed eleven Class Representatives; and (iii) appointed Nelson Boyd, LLC and the Cochran Firm Dothan and the

Cochran Firm Birmingham as counsel for the Class ("Original Class Counsel").  On December 4, 2013, Swift moved the Court to reconsider the Class Certification Order.  The Court denied Swift's motion for reconsideration on January 23, 2014.

F.     On July 9, 2015, the Court issued an Order to Show Cause directing the Plaintiffs to show cause  why the Court should not vacate the Class Certification Order due to the Court's serious concerns regarding the adequacy of Original Class Counsel.

G.     In response, Original Class Counsel moved for leave for Hagens Berman Sobol Shapiro LLP ("Class Counsel") to file a Motion for Appointment as Class Counsel pursuant to Fed. R. Civ. P. 23(g).   Class Counsel filed a Motion to Appoint Counsel on August 21, 2015. The Court granted the motion on September 2, 2015, and appointed Hagens Berman as class counsel.

H.     On or about June 20, 2016, a Notice of Pendency of Class Action ("Class Notice") was mailed to a list of persons Swift provided for purposes of class notice.  The Class Notice gave Class Members the opportunity to opt out of the class action.

I.     A trial of this Action was set before Judge Benjamin Settle in the United States District Court Western District of Washington at Tacoma for Tuesday, September 19, 2017.

J.     Plaintiffs had asserted claims against Swift on behalf of the certified Class, and intended to assert them at trial, based on violations of:  (i)  RCW § 49.46.130 for failure to pay overtime, or the reasonable equivalent of overtime; (ii) violation of RCW § 49.46.090 for the failure to pay wages to Plaintiffs and Class members who attended orientation in Washington during the Class Period; (iii) violation of RCW § 49.52.060 for deriving financial profit or benefit for deductions made from employee wages pursuant to the company's *per diem* program; (iv) violation of RCW § 49.52.050 for the failure to pay overtime, to compensate drivers for

mandatory orientation, and unlawful deductions from wages willfully, and with intent to deprive Plaintiffs and the Class of wages; (v) exemplary damages under RCW § 49.52.070; (vi) attorneys' fees under RCW § 49.52.070 and RCW § 49.46.090; and (vii) pre-judgment interest.

K.     On June 15, 2017, the Parties participated in mediation before Judge Charles S. Burdell, Jr. (Ret'd).  The mediation was unsuccessful.  The Parties participated in a second mediation before Judge Burdell on August 29, 2017, and agreed on that date to settle Class-wide damages on the terms contained in an initial settlement term sheet (dated August 29, 2017), which the parties and the mediator signed on August 30, 2017.

L.     After the Parties reached agreement on the terms of the Settlement, and signed the initial term sheet, they separately began negotiation of Class Counsel's attorneys' fees and litigation expenses.  At the mediation, Swift agreed in principle to pay Class Counsel's attorneys' fees and costs separate from the Settlement Fund, but did not agree on an amount.  The Parties conferred by telephone and in person on multiple days after the mediation to attempt to reach agreement on attorneys' fees and expenses, to be submitted to the Court for approval under Rule 23(h). An agreement was reached on September 20, 2017, under which Plaintiffs have agreed to seek no more than $2,050,000.00 as payment for Class Counsel's fees and expenses by motion under Rule 23(h) and Swift has agreed that it will not oppose Plaintiffs' fee petition on behalf of Class Counsel in that amount.

M.     Swift denies liability with respect to all claims in the Action and all claims released in the Settlement Agreement and denies all charges of wrongdoing or liability against it arising out of or relating to any conduct, acts, or omissions alleged in the Action.

N.     Plaintiffs and their Counsel believe that the claims asserted in the Action possess merit and have examined and considered the benefits to be obtained under the proposed

- 3 -

settlement set forth in this Settlement Agreement, the risks associated with the continued

prosecution of this complex and time-consuming litigation, and the likelihood of success on the

merits of the Action.  The Plaintiffs and their counsel have conducted extensive discovery of

Swift, and have investigated the facts and law relevant to the merits of the claims.  In

consideration of these circumstances, the Plaintiffs have concluded that the proposed Settlement

set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Class as

defined in this Agreement.

O.     The Parties intend that this Settlement will resolve all claims of the Class

Members as defined herein, except as otherwise indicated.  The Parties intend this Agreement to

bind Swift, all Class Representatives, and all Class Members as defined below.

**NOW, THEREFORE, IT IS HEREBY STIPULATED, CONSENTED TO AND**

**AGREED,** by the Class Representatives, for themselves and on behalf of the Class, and Swift,

that, subject to the approval of the Court, this Action shall be settled, compromised, and

dismissed, on the merits and with prejudice, and the Released Claims shall be finally and fully

compromised, settled, and dismissed as to the Released Parties, in the manner and upon the terms

and conditions set forth below:

## I.     DEFINITIONS

As used in this Settlement Agreement, the following terms have the meanings specified

below:

A.     "**Action**" means *Slack, et al. v. Swift Transportation Company of Arizona, LLC,* Case No.

3:11-cv-05843-BHS (W.D. Wash.).

B.     "**Class**" is defined as follows:

> All current and former Swift employee Dedicated Drivers who were
> assigned by Swift to a Washington position and/or terminal after July 18,
> 2008; and who were paid by the mile and worked in excess of forty hours

- 4 -

in a week; or who participated in and completed Swift's new driver Orientation Program in a Washington location; or who participated in Swift's Per Diem program for mileage-based drivers.

C.    "**Class Counsel**" means the law firm of Hagens Berman Sobol Shapiro LLP.

D.    "**Class Member**" refers to a member of the Class.  Class Member does not refer to any individual who fits within the definition of the Class, but previously elected to opt-out of the Class or any individual who elects to opt-out of the Class following notice of Settlement as provided herein.

E.    "**Class Period**" means the time period between the date the Action was first filed (July 18, 2011) through the "Preliminary Approval Date" as defined below.

F.    "**Class Representative**" means one or more or all of the following: (1)  Troy Slack; (2) Jacob Grismer; (3) Richard Erickson;   (4) Scott Praye;(5)  Gary H. Roberts; (6) Robert P. Ullrich; (7) Henry Ledesma; (8) Timothy Helmick; (9) Dennis Stuber; and (10) Sean P. Forney.

G.    "**Dedicated Driver**" means any current or former employee driver who, at any time after July 18, 2008, was assigned by Swift to a terminal and/or customer facility physically located in the State of Washington and, during that assignment, drove routes for a single specified customer account.

H.    "**Effective Date**" of this Agreement shall mean the date on which a judgment finally approving this Settlement is no longer appealable, or if an appeal has been filed, the date on which the appeal is final and this Settlement is upheld.

I.    "**Escrow Account**" means the bank account maintained by the Escrow Agent into which the Settlement Fund shall be deposited.

J.    "**Escrow Agent**" means the entity to be appointed by Class Counsel to maintain the bank account into which the Settlement Fund shall be deposited.

K.      "**Final Approval**" shall mean a Court Order granting final approval of this Settlement and/or Judgment granting final approval of this Settlement.

L.      "**Final Approval Date**" means the date final approval of this Settlement is granted by the Court.

M.      "**Gross Settlement Amount**" means five million fifty thousand dollars ($5,050,000.00).

N.      "**Net Settlement Amount**" means that amount of the Gross Settlement Amount available for distribution to the Class after deductions for any Class Representative service awards approved by the Court and any deductions for taxes and tax expenses related to the Settlement Fund.

O.      "**Original Class Counsel**" means Nelson Boyd, LLC and the Cochran Firm Dothan and the Cochran Firm Birmingham.

P.      "**Per Diem Program**" means the program under which Swift withheld a portion of its drivers' per-mile compensation to account for per diem expenses.

Q.      "**Preliminary Approval Order**" shall mean a Court Order preliminarily finding that this Settlement falls within the range of possible settlement approval.

R.      "**Preliminary Approval Date**" shall mean the date on which the Court enters a Preliminary Approval Order.

S.      "**Released Claims**" means all claims that are released by this Settlement Agreement.

T.      "**Released Party**" means Swift Transportation Company of Arizona, LLC and all of its present, former, and future officers, directors, employees, agents, attorneys, insurers, insurance agents and brokers, independent contractors, successors, assigns, parents, subsidiaries, affiliates, and/or shareholders.

U.      "**Settlement**" means the settlement and release described in this Agreement.

V.     **"Settlement Administrator"** means Kurtzman Carson Consultants.

W.     "**Settlement Fund**" refers to the fund created by Swift's payment of the Gross Settlement Amount in settlement of the Action.

X.     "**Settlement Notice**" means the Notice of Settlement of Class Action substantially in the form agreed to by the Parties and subject to the Court's approval.  A proposed Settlement Notice will be attached as an exhibit to the declaration of Kurtzman Carson Consultants in support of Plaintiffs' unopposed motion for Preliminary Approval of the Settlement.

Y.     "**Settlement Opt-Out Date**" shall mean thirty (30) days from the date of mailing of the Settlement Notice by the Settlement Administrator to Class Members, unless otherwise ordered by the Court.  A Request for Exclusion (or "opt-out") from the Settlement must be postmarked no later than this date.

Z.     "**Settlement Website**" means the website maintained by the Settlement Administrator for purposes of notifying the Class of the Settlement and administering the Settlement.

## II.     CONSIDERATION

A.     **Settlement Fund**

Swift shall pay an aggregate sum of five million fifty thousand dollars ($5,050,000) – the Gross Settlement Amount – in settlement of the Action into the Settlement Fund.  This amount includes, without limitation, all monetary benefits to the Class, except that it does not include: (1) payment of Class Counsel's attorneys' fees and expenses; and (2) payment of the costs of settlement notice and settlement administration, both of which shall be paid in addition to the Settlement Fund.  As of the Effective Date, Swift shall not have any right to the return or reversion of the Settlement Fund, or any portion thereof.

**B.      Settlement Administration Expenses**

Swift shall pay all costs reasonably necessary for settlement administration (the "Notice and Administrative Costs") separate from the Settlement Fund.  This includes, without limitation, the costs of Settlement Notice, and the calculation and distribution of the Settlement Fund to Class Members.

**C.      Attorneys Fees and Expenses**

Swift shall pay Class Counsel's attorneys' fees and expenses in the amount of $2,050,000.00, subject to approval of the Court under Rule 23(h).

**D.      Escrow Account**

The Settlement Fund shall be deposited into an interest-earning escrow account designated by Class Counsel and approved by Swift (such approval not to be unreasonably withheld), and all interest accruing thereon shall be deemed to be in the custody of the Court, and will remain subject to the jurisdiction of the Court until such time as it is distributed in compliance with the Settlement Agreement and Court order.

**E.      Payments By Swift**

1.      In full and complete settlement of all claims asserted in the Action against Swift, Swift shall pay into the Escrow Account, for the benefit of the Settlement Class within ten (10) days of the Preliminary Approval Date, five million and fifty thousand dollars ($5,050,000.00) for the Settlement Fund.

2.      Swift shall pay the full amount of the notice and administrative Costs for completion of the settlement notice and settlement administration process directly to the approved Settlement Administrator after receiving invoices for services.

3.      Swift shall pay directly to Class Counsel Class Counsel attorneys' fees and expenses in the amount of $2,050,000.00, or such other amount ordered by the Court upon Court

approval of such fees and expenses.  Payment of attorneys' fees and expenses shall be made no later than fifteen (15) days following the Final Approval Date.

**F.      Disbursements Prior to Effective Date**

No amount may be disbursed from the Settlement Fund or the Escrow Account unless and until the Effective Date, except that Taxes and Tax Expenses (as defined in paragraph G below) may be paid from the Gross Settlement Fund as they become due.  Attorneys' fees and reimbursement of litigation costs and expenses approved by the Court shall not be paid into the Settlement Fund or Escrow Account and may be paid by Swift directly to Class Counsel at any time before fifteen days following the Final Approval Date.

**G.      Taxes**

1.      The Settling Parties and the Escrow Agent agree to treat the Gross Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1.  The Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to prepare and deliver timely and properly the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

2.      For the purpose of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent.  The Escrow Agent shall satisfy the administrative requirements imposed by Treas. Reg. §1.468B-2 by, *e.g.*, (i) obtaining a taxpayer identification number, (ii) satisfying any information reporting or withholding requirements imposed on distributions from the Gross Settlement Fund, and (iii)

- 9 -

timely and properly filing applicable federal, state and local tax returns necessary or advisable with respect to the Gross Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)) and paying any taxes reported thereon.  Such returns (as well as the election described in this paragraph) shall be consistent with the provisions of this paragraph and in all events shall reflect that all Taxes as defined in paragraph 16(b) below on the income earned by the Gross Settlement Fund shall be paid out of the Gross Settlement Fund as provided in paragraph 18 hereof.

3.      The following shall be paid out of the Gross Settlement Fund:  (i) all taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Gross Settlement Fund, including, without limitation, any taxes or tax detriments that may be imposed upon Swift or its counsel with respect to any income earned by the Gross Settlement Fund for any period during which the Gross Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes (collectively, "Taxes"); and (ii) all expenses and costs incurred in connection with the operation and implementation of this paragraph, including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this paragraph (collectively, "Tax Expenses").

4.      In all events neither Swift nor their counsel shall have any liability or responsibility for the Taxes or the Tax Expenses.  With funds from the Gross Settlement Fund, the Escrow Agent shall indemnify and hold harmless Swift and their counsel for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Gross Settlement Fund and shall timely be paid by the Escrow Agent out of

the Gross Settlement Fund without prior order from the Court, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Recipients any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(1)(2)); neither Swift nor its counsel are responsible therefor, nor shall they have any liability therefor.  The Settling Parties agree to cooperate with the Escrow Agent, each other, their tax attorneys and their accountants to the extent reasonably necessary to carry out the provisions of this paragraph.

**H.      Calculation of Individual Class Members' Settlement Proceeds**

The Settlement Administrator will calculate the amount to be paid to each Class Member based on the formulas described herein.

**I.      Tax Consequences to Individual Class Members**

Swift will not be responsible for any tax consequences to any individual Class Member as a result of any settlement distribution made to that individual Class Member.

**J.      Other Consequences to Individual Class Members**

The Parties expressly agree that any payments made to Settlement Class Members shall not be construed as compensation for purposes of determining eligibility for unemployment compensation or any benefits from Swift, including health and welfare benefits, unless otherwise prohibited by any law or other binding authority.  Specifically, payments made under this Agreement shall not be utilized to accrue or calculate any additional benefits under any benefit plans to which any Class Members may be eligible, including, but not limited to: profit-sharing plans, bonus plans, 401(k) plans, stock purchase plans, vacation plans, sick leave plans, PTO plans, and any other benefit plan.  Rather, it is the Parties' intention that this Agreement will not

affect any rights, contributions, or amounts to which any Class Members may be entitled under any benefit plans.

**K.      Confirmatory Discovery**

The Parties may conduct reasonable confirmatory discovery referred to in the Settlement Agreement, with respect to sums payable to individual Class Members under the Settlement Agreement, and with respect to all matters reasonably necessary to conclude this Settlement and to assure Class Members and the Court of Plaintiffs' due diligence.  The Parties shall bear their own fees and costs associated with any confirmatory discovery.

**III.      OBTAINING COURT APPROVAL OF THE SETTLEMENT**

**A.      Preliminary Approval Motion**

1.      By September 20, 2017, Plaintiffs shall submit to the Court a motion for preliminary approval.  The motion for preliminary approval shall include a proposed plan for the sending of notice to Class Members within ten (10) days after the Preliminary Approval Date (the "Mailed Notice Date"), and establishing a period of thirty (30) days after the Mailed Notice Date within which any Settlement Class Member may: (a) request exclusion from this Settlement Agreement; (b) object to the Settlement Agreement; and/or (c) object to Class Counsel's request for fees and costs (the "Exclusion/Objection Deadline").  Class Notice shall set forth the maximum amount of attorneys' fees and expenses Class Counsel shall seek.

2.      The motions for preliminary approval of settlement and award of attorneys' fees and costs shall also request that any hearing on final approval of the settlement and determination on the request for fees and costs ("Fairness Hearing") be set for no earlier than fifteen (15) days after the Exclusion/Objection Deadline; that Class Counsel shall file its motions for attorneys' fees and costs and incentive awards at least fourteen (14) days before the

- 12 -

Exclusion/ Objection deadline; and that any reply briefs on such motions and Plaintiffs' motion for final approval shall be filed fourteen (14) days prior to the Fairness Hearing.

**B.      Judgment**

1.      At the Fairness Hearing, Plaintiffs shall request entry of a Judgment directing that the claims of the Class Members against Swift in the Action be dismissed with prejudice, and releasing, as against Swift, the Released Claims, and further:

a.      approving finally the Settlement as fair reasonable, and adequate within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and directing its consummation pursuant to the terms of this Settlement Agreement without modification;

b.      permanently barring and enjoining the institution and/or prosecution, by Class Representatives and Class Members, of any other action against the Released Party in any court asserting any Released Claim;

c.      reserving jurisdiction over the Action to the extent permitted by law, including all further proceedings concerning the administration, consummation, and enforcement of this Settlement Agreement; and

d.      containing such other and further provisions consistent to the terms of this Settlement Agreement to which the Parties expressly consent in writing.

2.      The Parties and their counsel shall use their best efforts to obtain an Approval Order approving the Settlement.

**C.      Attorneys' Fees and Litigation Expenses**

1.      At the Fairness Hearing, Class Counsel will also request entry of an Order approving Class Counsel's attorneys' fees and expenses, which shall be paid in addition to and separate from the Settlement Fund.  Class Counsel and Swift negotiated the attorneys' fees and

expenses separate from the Settlement Fund and Class Counsel shall be paid $2,050,000.00, if approved, or any alternate amount that the Court orders.

2.     Class Counsel shall file a motion for approval of Class Counsel's attorneys' fees and expenses not to exceed $2,050,000.00.  Swift shall not oppose any such motion.

3.     The Parties agree that the Court's approval of any request for attorneys' fees or expenses is not a condition to this Agreement.

**D.     Class Representative Service Awards**

1.     Class Counsel may request service awards not to exceed seven thousand five hundred dollars ($7,500.00) per Class Representative.  Any service awards shall be paid out of the Gross Settlement Amount, subject to Court approval, which Swift shall not oppose.

2.     The Parties agree that the Court's approval of any request for service awards is not a condition to this Agreement.

## IV.     NOTICE AND ADMINISTRATION

**A.     Notice**

1.     The Parties will agree on a form of Settlement Notice.  Plaintiffs will draft the Settlement Notice, which will include an estimate of each Class member's proceeds from the Settlement.  Swift will have an opportunity to comment and propose revisions to the Settlement Notice.

2.     The Settlement Notice will include without limitation the following:  an estimate of each Class Member's proceeds from the Settlement (the "Class Payment Estimate") and an opportunity to opt-out of the Settlement.

3.     The Class Payment Estimate for each Class Member will be the sum of such Class Member's Individual Overtime Damages and Individual Per Diem Damages (if any) as

calculated in § IV.B.5 below, assuming that a total of $75,000 in service awards is approved by the Court (resulting in a Net Settlement Fund of $4,975,000).

4.      The Settlement Notice shall also state that Class Members who attended orientation sessions in Washington State and were not paid therefor shall receive an additional payment of sixteen (16) hours at the minimum wage rate for Washington at the time such orientation was completed.  It is assumed that the total amount paid to Class Members for Individual Orientation Damages will be no more than $100,000.

5.      Notice will be by direct methods to the Class, by way of U.S. Mail to the last known address for each Class Member, pursuant to the information described in § IV.B.3, in the same manner that the Notice of Pendency of Class was issued.  Notice will also be provided by way of the Settlement Website.

**B.      Administration**

1.      Plaintiffs obtained competitive bids for the settlement notice and administration of the Settlement and provided the competitive bids to Swift's counsel.  As a result of the competitive bid process, the parties agreed to retain Kurtzman Carson Consultants as Settlement Administrator and to complete the settlement notice process and to administer the Settlement.

2.      The Settlement Administrator will discharge all duties customarily required of a Settlement Administrator, including, without limitation, mailing notices and the calculation of payment amounts due to Class Members, and distribution of Settlement proceeds to Class Members.

3.      No later than seven (7) days after the Preliminary Approval Date, Swift will provide the Settlement Administrator with an updated Class list, including (i) all persons identified on Sabbe Limited Class List, which is the Class list Swift expert Angela Sabbe used for purposes of her work in the case and which Plaintiffs' expert Dwight Steward, Ph.D. adopted,

- 15 -

and any Class Members who have been hired by Swift since the production of the Sabbe Limited

Class List; and (ii) the most up-to-date contact information available to Swift.

4.      No later than seven (7) days after the Preliminary Approval Date, Swift will also

provide the Settlement Administrator with employment data sufficient for the Settlement

Administrator to complete the calculations described herein, other than the calculations described

for Individual Orientation Claims.

5.      If, notwithstanding its diligent and concerted efforts, Swift cannot provide the

Settlement Administrator with the Class data described in the preceding paragraphs, and this

inability affects the Settlement Notice date, or any other dates set by this Agreement or the

Court, the parties will confer on a revised schedule and seek Court approval of the revised

schedule by filing a stipulation with a revised proposed schedule with the Court.

6.      The calculation of the payment amounts due to Class Members shall be as

follows:

a.      ***For Individual Orientation Damages***:  Each Class Member who returns a

properly completed Orientation Pay Claim Form, attesting under penalty of perjury that such

Class Member attended a two-day orientation session in Washington State during the Class

Period and was not paid for doing so and states the dates of attendance, such Class Member shall

have Individual Orientation Damages equal to 16 hours multiplied by the Washington State

minimum hourly wage in effect at the time such Class Member completed his/her orientation.

The sworn statement will be the sole basis for determining Class Member eligibility for

Individual Orientation Damages.

b.      ***For Individual Per Diem Damages***:  Each Class Member who

participated in the Swift Per Diem Program shall have Individual Per Diem Damages equal to

sixty-six percent (66%) of the Per Diem Program amounts withheld from such Class Member, as Calculated by Swift through its employment records.  Swift will prepare a list of the affected Class Members, and the dates and the deductions from their pay for the per diem program during the Class Period and provide the list to Plaintiffs and the Settlement Administrator.  The list will be subject to confirmatory discovery if Class Counsel deems necessary.

    c. ***For Individual Overtime Damages***:  The Overtime Damages Fund shall be the Net Settlement Amount less the total amount paid to all Class Members for: (1) Individual Orientation Damages; and (2) Individual Per Diem Damages.  Each Class Member will be assigned an Overtime Pay Factor which will be the product of such Class Member's actual overtime hours worked (as reflected in Swift's employment records and subject to Confirmatory Discovery) multiplied by such Class Member's per mile pay rate at the time such overtime hours were worked (as reflected in Swift's employment records and subject to Confirmatory Discovery).  Each Class Member shall have Individual Overtime Damages equal to their pro rata share of the Overtime Damages Fund based upon such Class Member's Overtime Pay Factor divided by the sum of all Class Members' Overtime Pay Factors.

   7. The Settlement Administrator will calculate the amount to be paid to each Class Member based on the formulas described herein.

   8. Class Counsel shall direct the Settlement Administrator to set up a Settlement Website to facilitate administration of this Settlement at or before the date on which the Claims Administrator first distributes the Settlement Notice to Class Members.  The Settlement Administrator shall promptly post on the Settlement Website copies of the Second Amended Complaint, this Agreement, Plaintiffs' motions for preliminary and final approval of settlement,

- 17 -

Plaintiffs' motion for attorneys' fees, expenses, and service awards, the Settlement Notice, and/or other documents as may be directed by the Court or the Parties.

**C.     Distribution**

1.     Tax Considerations:

a.     Potential Judgement in this Action includes unpaid wages (taxable as W-2 income) and prejudgment interest or penalty damages (liquidated damages) (which are not W-2 income).  The ratio of W-2 wage damages to non-W-2 wage damages of the potential judgment in this Action is approximately 40/60, thus rendering it reasonable to allocate 40% of the damages paid to each Class Member as W-2 income and 60% as liquidated damages or prejudgment interest.

b.     The Settlement Administrator will allocate damages paid to each Class Member as 40% W-2 wages and 60% liquidated damages, which will be reported on Form 1099 as claimed penalties and interest, and make such reports to relevant taxing authorities as are customary and normal in settlements such as the Settlement.  The Settlement Administrator will effect the required tax withholding for damages reported on a W-2 as wages.  Class Members will be solely responsible for all federal, state, and local tax filings and liabilities related to payments subject to a reporting on Form 1099.

2.     Within ten (10) business days after the Effective Date, the Settlement Administrator will distribute the Gross Settlement Amount, as follows:

a.     The Class Representatives shall be each sent a check for the service award approved by the Court for such Class Representative.  The payment of service awards are not W-2 wages and will be reported on Form 1099.

b.     Each Class Member shall be issued a check in the amount of the sum of their: (1) Individual Orientation Damages (if any); (2) Individual Per Diem

- 18 -

Damages (if any); and (3) Individual Overtime Damages.  Check distribution to Class

Members shall be accomplished by a first-class mailing for each eligible Class Member

to the last known address based on Swift employment records and updated addresses

obtain through the class notice process already completed in this Action.

    c.  The Claims Administrator shall keep track of any settlement

checks "returned to sender" with bad addresses and:  (1) inform the parties in writing of

any such checks; (2) attempt to locate such Class Member through reasonably available

national databases and directories; and (3) if a new address is located, resend such

undeliverable settlement check.

    d.  The stale date for the settlement checks shall be 120 days from the

date of issuance.  Within twenty (20) days after the stale date of the settlement checks,

the Settlement Administrator will: (1) report to Class Counsel the name and address, of

all Class Members who did not cash their checks; and (2) attempt to locate such Class

Member through reasonably available national databases and directories; and (3) if a new

address is located, send a new settlement check with a stale date 60 days from the date of

issuance.

    3.  If after the stale date of the last issued settlement check, the total of all uncashed,

stale settlement checks exceeds $15,000.00, the Settlement Administrator will effect a second

distribution to Class Members who have cashed their settlement checks, in an amount

proportionate to each such Class Member's overtime distribution as a percentage of the total of

all overtime payments .  If the sum of such uncashed settlement checks are less than $15,000.00,

such funds shall be paid to a *Cy Pres* mutually agreed by the parties and approved by the Court,

or, by agreement of the parties and approved by the Court, shall escheat to the State of Washington.  No portion of the Settlement Fund shall revert to Swift.

## V.      RELEASE

1.      The payments described in this Settlement Agreement settle the Class's Overtime Claims, Orientation Claims, and Per Diem Claims, as well as any other claims that could have been brought.  Each Class Member shall release these claims for the Class Period.

2.      More specifically, each Class member shall release Swift and its present and former parent companies, affiliates, shareholders, employees, subsidiaries, owners, managers, officers, directors, agents, representatives, divisions, attorneys, insurers, successors and assigns ("Released Parties") from any and all claims, liabilities, rights, demands, suits, matters, obligations,  liens, damages, losses, costs, expenses, debts, penalties, payments, actions, and causes of action, of every kind and/or nature whatsoever, regardless of legal theory or type or amount of relief or damages claimed, which any Class Member now has, or at any time ever had against any Released Parties arising out of, based on, or relating in any way to the allegations asserted in this lawsuit.

3.      The releases herein are conditional upon Final Approval of the Settlement and effective upon the Effective date of the Settlement.

## VI.      MISCELLANEOUS PROVISIONS

**A.      No Admissions**

This Agreement shall not constitute an admission on behalf of Swift of any form of liability or the accuracy of any allegation against it.

010532-11 986753 V1

**B.** **No Retaliation**

Swift covenants and agrees that it will not retaliate against any Class Member because of participation in this Agreement, or because of receiving any award or distribution in connection with this Agreement, or otherwise because of being a Settlement Class Member.

**C.** **Limited Publication and Mutual Non-Disparagement**

Plaintiffs and Swift, and their respective counsel, agree that they shall not publicize the terms of this Agreement, with the following exceptions:

1.      As reasonably necessary to obtain Court approval and carry out the administration and/or terms of this Agreement;

2.      To communicate with Class Members;

3.      As required by applicable law;

4.      With the other Party's prior written consent;

5.      To spouses, successors, governmental entities, Released Person, and to those advisors and employees necessary to advise the Parties, including accountants and legal professionals; and

6.      Plaintiffs' Counsel may publish the fact of settlement on their firm website and link to copies of this Agreement and the public pleadings in this Action solely for the purpose of informing potential class members of the proposed resolution, but agree not to promote or publicize the terms of this Agreement on its website for marketing purposes.

**D.** **Advice of Counsel**

The parties agree that this Agreement reflects a good-faith compromise of all claims raised in this Action based upon their assessment of the mutual risks and costs of further litigation and the assessments of their respective counsel.

010532-11 986753 V1

**E.      Extensions of Time**

Unless otherwise ordered by the Court, the Parties may jointly agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

**F.      Governing Law**

This Agreement shall be construed in accordance with, and be governed by, the laws of the State of Washington.

**G.      Integration**

This Agreement, [including all exhibits], constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter with the Agreement. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party to the Agreement, except as provided in the Agreement.

**H.      Representative Capacity**

Each person executing this Agreement in a representative capacity represents and warrants that he or she is empowered to do so.

**I.      Counterparts**

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts.  Copies and facsimile transmission of signatures shall be considered the same as original signatures.

**J.      Cooperation of Parties**

The Parties to this Agreement agree to prepare and execute all documents, to seek Court approvals, to defend Court approvals (including without limitation cooperating to overcome any objections to the Settlement Agreement), and to do all things reasonably necessary to complete the Settlement described in this Agreement and to secure approval of the Settlement.

**K.     Notifications**

1.      All notices to Class Counsel provided for pursuant to this Agreement shall be sent by e-mail to Hagens Berman Sobol Shapiro LLP, 1918 Eighth Avenue, Suite 3300, Seattle, Washington 98101, e-mail address to be determined and with hard copies sent by mail.

2.      All notices to Swift provided pursuant to this Agreement shall be sent by e-mail to Sheryl Willert, Williams, Kastner & Gibbs, 601 Union Street, Suite 4100, Seattle, WA  98101, e-mail address swillert@williamskastner.com and with hard copies sent by mail.

3.      Upon the request of any Party, the Settlement Administrator shall promptly provide copies of all objections, challenges, requests, or other documents received as a result of the Settlement Notice.  The Parties agree to request that Settlement Administrator also provide to both Class Counsel and Swift's Counsel any copy of objections, opt-outs, challenges, or other filings received as a result of the Settlement Notice.

**L.     Modification and Amendment**

This Agreement may be amended or modified only by a written instrument signed by the Parties' respective Counsel and approved by the Court.

**M.     No Tax Advice**

Swift and the Released Persons have not provided any tax or legal advice, and have not made any representations regarding tax obligations or consequences, if any, related to his Agreement.  Each Final Settlement Class Member shall be solely responsible for any additional tax liability or penalties that may result from any payment that he may receive pursuant to the terms of this Agreement, including penalties and forfeitures arising from such payment.

**N.     Binding on Heirs and Successors**

This Agreement shall be binding on and inure to the benefit of Swift, the Released Persons, Plaintiffs, Final Settlement Class Members, and the past, present, and future spouses,

children, heirs, trustees, representatives, predecessors and successors in interest, executors,

administrators, and assigns of each.

**O.      Counting Days**

Where any date or deadline contemplated by this Agreement falls on a weekend day or

federal holiday, the date or deadline shall be construed to be the following business day.

**SIGNED AND AGREED ON BEHALF OF CLASS** this _20th_ day of September, 2017.

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By: _____

Steve W. Berman, WSBA # 12536
Thomas E. Loeser, WSBA # 38701
Jeniphr A.E. Breckenridge, WSBA # 21410
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
jeniphr@hbsslaw.com
toml@hbsslaw.com

**SIGNED AND AGREED BY SWIFT TRANSPORTATION COMPANY OF ARIZONA,
LLC** this _20th_ day of September, 2017.

**WILLIAMS, KASTNER & GIBBS PLLC**

By: _____

Sheryl J. Willert, WSBA #08617
David W. Wiley, WSBA #08614
Jeffery M. Wells, WSBA #45840
601 Union Street, Suite 4100
Seattle, WA 98101-2380
Telephone: (206) 628-6600
Facsimile: (206) 628-6611
swillert@williamskastner.com

- 24 -

dwiley@williamskastner.com
jwells@williamskastner.com

010532-11 986753 V1