UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TROY SLACK, et al.,<br><br>              Plaintiff,<br><br>   v.<br><br>SWIFT TRANSPORTATION CO. OF ARIZONA, LLC,<br><br>              Defendant. | CASE NO. C11-5843 BHS<br><br>ORDER DENYING PARTIES' MOTIONS ON THE SCOPE OF THE OVERTIME CLASS AND REQUESTING JOINT STATUS REPORT ON PROCEDURE FOR AMENDING CLASS CERTIFICATION |

This matter comes before the Court on the parties' motions and responses regarding the overtime claim dispute (Dkts. 295, 297, 298, 300). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby rules as follows:

## I. PROCEDURAL AND FACTUAL BACKGROUND

On March 1, 2007, the Washington Supreme Court issued its decision in *Bostain v. Food Express*, *Inc.*, 159 Wn.2d 700 (2007). The court concluded that a "Washington-based" driver was entitled to overtime under Washington's Minimum Wage Act ("MWA"), RCW Chapter 49.46, even if the driver worked some of his or her hours out of

state. *Id*. at 724 ("The overtime provisions of RCW 49.46.130 apply to all hours worked by a Washington-based truck driver engaged in interstate transportation, whether within Washington State or outside the state."). The court also warned that "[e]mployers will need to identify those employees who are subject to Washington's MWA and keep track of total hours." *Id*. at 719.

On July 18, 2011, Plaintiff Troy Slack ("Slack") filed a class action complaint against Defendant Swift Transportation Co. of Arizona, LLC ("Swift") in the Pierce County Superior Court for the State of Washington. Dkt. 3 at 4–17. Slack alleged that he was a resident of Washington and worked for Swift. *Id*. ¶ 3.1. He also alleged that his base terminal was located in Washington. *Id*.

On September 9, 2011, Slack filed an amended class action complaint adding Plaintiffs Richard Erickson, Jacob Grismer, and Scott Praye. *Id*. at 20–34. The new plaintiffs alleged that they worked for Swift and that their base terminal was in Washington. *Id*. ¶¶ 3.2–3.4.

On October 12, 2011, Swift removed the matter to this Court. *Id*.

On May 16, 2012, Plaintiffs Richard Erickson, Jacob Grismer, Scott Praye, and Slack filed a second amended class action complaint adding Plaintiffs Gary Roberts, Robert Ulrich, Henry Ledesma, Timothy Helmick, Dennis Stuber, Eric Dublinski and Sean Forney (collectively "Plaintiffs"). Dkt. 29. Relevant to the instant motion, Plaintiffs alleged a class as follows:

> All current and former Washington based employees who at anytime worked in excess of 40 hours in a week and whose duties include or have included participating in orientation and training as well as independently

driving freight trucks while being paid under a mileage based compensation system.

*Id*. ¶ 4.1. Plaintiffs asserted numerous claims, including a claim that Swift failed "to compensate Plaintiffs for their employment in excess of 40 hours per week at a rate not less than one and one-half times the regular rate of pay at which they were employed, or the reasonable equivalent thereto," in violation of the MWA. *Id*. ¶ 8.3.

On June 28, 2013, Plaintiff moved to certify the class and proposed an initial definition of "Washington-based driver" as applied to the overtime claim as follows:

> All current and former Swift employee interstate drivers who were assigned by Swift to a Washington position and/or terminal after July 18, 2008; and,
> (1) Who were paid by the mile and worked in excess of forty hours in a week; . . . .

Dkt. 40 at 8. In support of this definition, Plaintiffs asserted as follows:

> The above criteria allow for relatively easy identification of the class members using Swift's own work records. Swift's management personnel and named Plaintiffs have agreed that drivers assigned to a Washington terminal are assigned specific position numbers or codes which are used by Swift's central payroll department. Corporate representative Sarah Koogle, the payroll project leader for Swift, testified that she was able to use a position code as "selection criteria of identifying drivers who were – work—or based out of a Washington location" for the last four years. Whether a driver exceeded forty hours of drive-time in any given week can be determined by reviewing Swift's payroll records and Swift's Qualcomm electronic logbook records (as well as the driver's own DOT logbook) for the average speed and mileage each week.

*Id*. at 9 (citing the deposition of Sarah Koogle, Dkt. 40-3). Ms. Koogle, as Swift's 30(b)(6) representative, testified that Swift assigned "home terminals" for their drivers. Dkt. 40-3 at 7, 35–36.

In support of their motion, Plaintiffs submitted a document created by Swift regarding overtime pay in Washington. The form is titled "Ackowledgement of Rate of Pay for Washington based employees" and provides as follows:

> All Washington based drivers are entitled to overtime pursuant to state law. Accordingly, the mileage rates in Washington State are higher than elsewhere because, in accordance with state law, Swift has built overtime into those rates.

Dkt. 40-2 at 2. At the bottom, the form provides that it is "To be signed in orientation for all Washington based drivers." *Id*.[1] Swift presented the form to Slack in 2011 even though Slack began driving for Swift in 2006. Dkt. 49, ¶¶ 2, 13. Slack refused to sign the form because he "did not agree that [his] mileage based pay rate has ever included an amount to compensate [him] at an overtime rate for all driving time [he] worked over 40 hours in a week." *Id*. ¶ 14. Moreover, Slack declares that no Swift employee "had ever suggested that [his] mileage rate included an amount to compensate [him] with overtime pay for driving in excess of 40 hours per week." *Id*. ¶ 15.

On August 2, 2013, Swift responded and opposed certification. Dkt. 57. Swift essentially argued that its accounting system is so complicated that Plaintiffs would be unable to identify a "common method by which to identify drivers who are Washington based." Dkt. 57 at 9–10. In direct contradiction to the Washington Supreme Court's statement in 2007 that "[e]mployers will need to identify those employees who are subject to Washington's MWA and keep track of total hours," *Bostain*, 159 Wn.2d at

---

[1] This is evidence that, at some point in time, Swift was able to identify its "Washington based drivers."

719, Swift stated in 2013 that "[t]here is no means to determine which [Swift] drivers are Washington based." Dkt. 57 at 29. Swift, however, stated that it had "dedicated drivers" and "Over-The-Road ("OTR")" drivers assigned to its two Washington terminals. *Id*. at 7. Similar to the driver in *Bostain*, the dedicated drivers were assigned to a specific terminal and work for only one account. *Id*.

In Plaintiffs' reply, they argued that the Court should certify a class including both the OTR drivers and the dedicated drivers. Regarding the dedicated drivers, Plaintiff submitted evidence to establish that dedicated drivers start and end their trips at the same Washington-based terminal located in either Sumner or Grandview. Dkt. 82 at 3–4.

On November 20, 2013, the Court granted in part and denied in part Plaintiffs' motion. Dkt. 83. The Court found that Plaintiffs had submitted sufficient evidence to establish that the dedicated "class of drivers would fall squarely within the type of employee contemplated by *Bostain*." *Id*. at 6. Thus, the Court certified the overtime class as follows:

> All current and former Swift employee designated drivers who were assigned by Swift to a Washington position and/or terminal after July 18, 2008; and,
> (1) Who were paid by the mile and worked in excess of forty hours in a week; . . . .

*Id*. at 11. The Court erroneously stated "designated" when it meant "dedicated" in the first line. The Court subsequently granted Plaintiffs' motion to substitute "dedicated" for "designated." Dkt. 99 at 3.

On February 18, 2016, after years of formulating a proper class notice and substitution of class counsel, Plaintiffs filed a motion for approval of class notice and

notice distribution plan. Dkt. 153. The single outstanding issue was the definition of the word "dedicated." *Id*. Plaintiffs proposed a definition as follows:

> For purposes of this class action, "dedicated driver" means any current or former employee driver who, at any time after July 18, 2008, was assigned by Swift to a terminal and/or customer facility physically located in the state of Washington and, during that assignment, drove routes for a single specified customer account.
> Drivers who were exclusively over-the-road drivers are expressly excluded from the Class.

Dkt. 153-1 at 2. Swift objected to this definition because it "drastically and dramatically increases the class size." Dkt. 160 at 2. Swift argued that the definition would include not only dedicated drivers that always worked for a single account but also OTR drivers that may have worked as a dedicated driver at any time. *Id*. at 8. Swift offered limiting language as follows:

> For purposes of this class action, 'dedicated driver' means any current or former employee driver, who, at any time after July 18, 2008, was assigned by Swift to a terminal and/or Washington customer facility physically located in the state and <u>who, during the course of that primary assignment, was assigned routes for a single, specified customer account and engaged in local delivery service from that terminal or facility to points in the state and/or region (WA, OR, and ID)</u>.

or

> For purposes of this class action, "dedicated driver" means any current or former employee driver, who at any time after July 18, 2008, was assigned by Swift to a terminal and/or Washington customer facility physically located in the state and assigned to a single, specified customer account and <u>not serving in a surge, overflow, seasonal or supplemental capacity during such assignment</u>.

*Id*. at 4–5. The Court adopted Plaintiffs' proposed definition, approved the notice, and approved the distribution plan. Dkt. 168. The Court concluded that Plaintiffs' proposed

ORDER - 6

language was "the best notice practicable to clearly and concisely apprise potential class members of the requirements of Rule 23(c)(2)(B)." *Id*. at 2.

After some discovery disputes, Swift produced a list of 2,764 potential class members. Dkt. 216-21 at 5 (Angela Sabbe's expert report). Swift's attorney conceded that the list potentially included up to 1,200 drivers who may have exclusively been OTR drivers. Dkt. 285-1 at 2. Based on position codes provided by Swift, Ms. Sabbe "determined 1,482 drivers were paid during the class period in at least one of the mileage-paid, dedicated driver position codes." *Id*. at 10. Plaintiff expert, Dwight D. Steward, Ph.D., produced a damages estimate based on Ms. Sabbe's reduced list. He estimated that lost overtime would amount to $6,361,938 with exemplary damages of $6,361,938. Dkt. 216-24, ¶ 19.

On August 30, 2017, the Court granted the parties' stipulated motion to stay the proceeding due to settlement. Dkt. 273. On September 20, 2017, Plaintiffs filed a motion for preliminary approval of class action settlement. Dkt. 274. On October 10, 2017, the Court granted the unopposed motion. Dkt. 278.

On December 5, 2017, the parties filed a stipulated motion to stay the settlement deadlines and set a briefing schedule to resolve an issue "between the parties regarding the scope of the class that is subject to the release in the class settlement." Dkt. 280. On December 7, 2017, the Court granted the motion. Dkt. 281. On December 21, 2017, the parties filed opening briefs on the issue. Dkts. 282, 284. On March 20, 108, the Court held a hearing on the issue. Dkt. 291. On April 10, 2018, the Court vacated its preliminary approval of the class settlement and requested a joint status report on how the

parties intended to proceed. Dkt. 292. The Court concluded that a possibility existed that Plaintiffs did not account for some potential class members when they reached settlement. *Id*.

On April 20, 2018, the parties filed a joint status report stating that it is necessary for the Court to resolve a class definition problem. Dkt. 294. Specifically, the parties stated that:

> Resolution of the current dispute will affect: (1) whether at least 23 additional drivers who have worked at least one shift for a dedicated account in the Class period, but did not work overtime on any dedicated driving shift, should be in the Class; (2) whether drivers who worked shifts for dedicated accounts and worked overtime during such dedicated shifts should also receive distribution of the settlement proceeds based on their non-dedicated mileage-based overtime; and (3) whether Class members will release claims for all mileage-based overtime worked during the Class Period (dedicated and non-dedicated), or only overtime worked for dedicated accounts.

*Id*. at 2.

On May 10, 2018, the parties filed opening briefs. Dkts. 295, 297. On May 31, 2018, the parties filed responsive briefs. Dkts. 298, 300.

## II. DISCUSSION

It is apparent that a class definition issue exists. Plaintiffs contend that resolution of the issue may result in vacating the settlement, Dkt. 298 at 7, while Swift contends that "decertification of the entire class is warranted," Dkt. 300 at 4. At this point, it appears that the parties failed to reach a meeting of the minds on the scope of the settlement, which means the settlement may not be enforceable. The class, however, may be

modified to more accurately reflect the evidence presented and resolve the parties' dispute.

"An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). "A decision to certify or not to certify a class may therefore require revisiting upon completion of full discovery." *Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005). "[W]here common issues certainly exist, a district court might consider subclassing in lieu of decertification." *Landsman & Funk PC v. Skinder-Strauss Associates*, 640 F.3d 72, 95 (3d Cir. 2011), *opinion reinstated in part*, 09-3105, 2012 WL 2052685 (3d Cir. Apr. 17, 2012).

In this case, the evidence has establish that identifiable groups of drivers exist. For example, it seems undisputed that a group of drivers exists that worked for a dedicated account similar to the plaintiff in *Bostain*. Ms. Sabbe refers to these individuals as "Washington-based, mileage-paid, dedicated drivers at Swift." Dkt. 216-22, ¶ 30. These are the approximately "1,482 drivers who routinely drove dedicated accounts, not all 2,764 drivers to whom Plaintiffs had provided class notice." Dkt. 282 at 5. This appears to be the most easily identifiable subclass of overtime claims with the only dispute being whether Swift paid these drivers the reasonable equivalent of overtime. Amending the class definition to cover this subclass of overtime claims appears warranted to better conform to the actual evidence produced in discovery. In other words, now that experts have dissected Swift's complicated accounting system, there may exist a clearer definition of Swift's Washington-based drivers.

Next, the parties have identified a group of drivers that occasionally drove for a dedicated account and were paid by the mile, which the parties refer to as "hybrid drivers." *See*, *e.g*., Dkt. 297 at 2. At least two issues arise with these hybrid drivers: (1) whether such a driver can be considered a Washington-based driver under *Bostain* if he or she only occasionally drove a dedicated route, and (2) if the driver was Washington-based, whether the driver would be entitled to overtime for weeks working as a Washington-based driver or for all overtime during the class period. Plaintiffs bear the burden to show that these drivers meet the criteria for class certification, and it may be that individual issues predominate over class issues for these drivers. For example, if a driver only worked one week on a mileage-paid, dedicated account, would that driver be considered a Washington-based driver for purposes of the MWA?

Swift contends that the hybrid group of drivers were included in the class when the Court approved Plaintiffs' version of the class notice. Dkt. 297 at 9. Contrary to Swift's position, the Court did not "redefine" the class by approving Plaintiffs' notice. Instead, the Court stated that Plaintiffs' version of the notice was the best way to apprise potential class member of the class. In hindsight, the Court should have considered redefining the certification order at that time, but it did not seem that this dispute would evolve into an issue that could potentially derail a settlement. Regardless, the evidence establishes an issue that can be addressed with developing subclasses.

Finally, there is the group of exclusive OTR drivers and/or non-Washington-based drivers. The Court has excluded these drivers from the class even if some drivers were on Swift's initial list of potential class members.

In light of these concerns, the Court orders the parties to meet and confer regarding a briefing schedule. Because Plaintiffs bear the burden of identifying subclasses that are amenable to class resolution, it may make sense for Plaintiffs to file a motion to amend the class certification order. The Court, however, will allow the parties the opportunity to discuss and propose how the matter should proceed. In any event, the current motions to redefine the class without actually redefining the class will be denied.

### III.  ORDER

Therefore, it is hereby **ORDERED** that the parties' motions regarding the overtime claim dispute (Dkts. 295, 297) are **DENIED**. The parties shall submit a joint status report no later than July 13, 2018.

Dated this 9th day of July, 2018.

BENJAMIN H. SETTLE
United States District Judge